THE NEW ENGLAND NATIONAL BANK OF KANSAS CITY, MISSOURI, *Appellant,* v. MAT DICK *et ux., Appellees.*

No. 16,880.

#### SYLLABUS BY THE COURT.

AGENCY—*Payment of Note to Agent—Finding of Agency Supported by Evidence.* A customer of a local bank renewed for the seventh time a note for a certain indebtedness, leaving the former notes and other papers at the bank. Sometime after executing the last renewal and several weeks before it was due the maker, having a good balance on deposit, was requested by the cashier, who met him on the street, to pay the note by having it charged to his account, the cashier telling him the note could be had by calling for it at the bank, to which the maker consented. Soon thereafter the cashier sent the maker one of the former renewals, with a statement showing an item of interest improperly charged. The maker supposed the note was the last renewal, but made no investigation concerning it or the interest charge, and believed and continued to believe he had paid the debt. The note in question, the last renewal, was soon after its execution indorsed by the bank to the appellant, with other notes, to secure a loan made by the appellant to the bank. The note in question matured September 9, 1907. The bank failed and went into the hands of a receiver in January, 1908. The appellant did not present the note, which was made payable at the bank, and did not notify the maker of its dishonor or that it had been transferred by the bank until after the failure. The jury found that the bank was authorized by the appellant to collect the note before it was due, and that the bank intended to collect it when the amount thereof was charged to the maker's account. *Held,* that the appellant is not entitled to recover.

Appeal from Barton district court. Opinion filed March 11, 1911. Affirmed.

*James W. Clarke,* for the appellant.

*D. A. Banta,* for the appellees.

The opinion of the court was delivered by

WEST, J.:   The appellees, on March 9, 1907, executed a promissory note to the order of the Bank of Ellinwood for $3500, payable on September 9, 1907, at the bank.   This was the seventh renewal of the same indebtedness, and all the renewed notes had been left with the bank.   This note, with others, was negotiated to the appellant bank, to secure a loan of $6500 made by it to the Bank of Ellinwood.   Sometime after its negotiation the cashier of the Ellinwood bank, when calling at the appellant bank, wrote on the note in question with pencil, "Ex. 3 - 9 - 08," to signify that it was to be extended to March 3, 1908, saying that he wanted the appellant to carry it along.   The appellant did not expect the Ellinwood bank to pay this or the other collateral notes unless, and until, the obligation of the 6500-dollar note should fail, and then they would be sent to the Ellinwood bank for collection if that bank was doing business; if not, to some other bank.   But the note in question was never sent to any bank for collection.   It was held by the appellant until May 5, 1909, when this action was begun.   The 6500-dollar note was dated about April 24, 1907, and matured about July 24, 1907.   The Ellinwood bank failed in January, 1908, and the appellees, who were not otherwise indebted to the bank, did not know until after such failure and until the bank was in the hands of a receiver that their note had been negotiated to the appellant or to anyone.   On June 21, 1907 (the note having been made in March and coming due in September), the cashier of the Ellinwood bank met Mr. Dick, one of the appellees, on the street and told him that he (Dick) had plenty of money in the bank, and he, the cashier, would like to have the note paid, the result

being that with the consent of Dick the cashier charged the amount of the note, with $105.78 interest, to Mr. Dick's account, and told him that if he wanted it he would find his note among his papers at the bank, where his papers, including the renewals, were kept. Soon after this the cashier gave Mr. Dick a note, which the latter thought was the one he had paid, but which was in fact one of the former renewals, and also sent a deposit slip on which was written:

```
"Bank of Ellinwood, Ellinwood, Kan.
     Debit                    Mat Dick.
For account of note........... $3,500 00
Int. Jan. 23 to June 8..........   105 78

June 21, 1907................ $3,605 78"
```

To the petition the appellees pleaded, among other things, their right to have the note presented at the Ellinwood bank for payment at maturity, and the appellant's failure so to present it; that they had paid the note in full on June 21, 1907, to the agent of the appellant; that the failure to present prevented them from discovering the fraud of the Ellinwood bank, and prevented them from protecting themselves therefrom, and that the money they paid the cashier was held as a trust fund by the receiver for the benefit of the appellant. The jury found that the Ellinwood bank or its officers intended to collect the note in question when the payment was made on June 21, 1907. They also found that by the common agreement between banks the appellant had authorized the Ellinwood bank to collect the note before it was due. The general verdict was for the appellees, and the appellant complains of the overruling of its demurrer to certain counts of the answer, of certain instructions, and of the refusal to set aside the verdict and certain of the findings.

The fourth count of the answer was to the effect that the Ellinwood bank, by the negotiation of the note, became the primary debtor, and the appellees thereby became indorsers, and that the failure to present the

note at maturity released them.   This allegation was demurrable, but the court seems to have disregarded it in its instructions.

The fifth count averred that the appellant knew of the failing condition of the Ellinwood bank, and that the latter had the right to and did accept and receive the payment on June 21, 1907, as the agent of the appellant, and did as such agent acknowledge satisfaction of the note, and that it had such right to accept payment by virtue of the general custom among banks as well as between the appellant and the Ellinwood bank. The jury were instructed that the fact that the note was made payable at the Ellinwood bank did not itself make that bank the agent of the appellant to collect it, and that to make such payment a good defense it must be shown by a preponderance of the evidence, by express authority or by general rule or custom that the appellant looked to and depended on the Ellinwood bank to collect the note.   We think the demurrer as to this count was properly overruled, and that the instruction just referred to was not erroneous as against the appellant.

The seventh count amounted to an allegation that the money paid on June 21, 1907, went to the agent of the appellant, and remained available to the appellant as a trust fund in the hands of the receiver of such agent bank after its failure, having been mingled with its general assets and gone to swell the same.   We are not advised what instruction, if any, was given with reference to this allegation, but the demurrer thereto was rightfully overruled for the reason, if for no other, that it contained an averment of agency on the part of the bank which received the June payment.

More serious complaint is made, however, concerning the seventeenth instruction, with reference to presentment, which was as follows:

"You are instructed that if you find from the evidence

that the plaintiff acquired possession and title to the note sued on in this action from the payee named therein before its maturity, that it was his duty to present said note for payment when due at the place of payment named therein; and, if you find from the preponderance of the evidence that the plaintiff failed and neglected to present the same for payment at the place where by its terms it is made payable, and you further find from the evidence that the drawers of said note have suffered loss by reason of the holder's neglect so to present said note, and that the holder, by presentment, could have secured the payment thereof, and that by reason of his neglect the holders [drawers?] have suffered damages to the extent of the amount thereof, with interest, without any fault on their part, then the plaintiff can not recover."

Counsel assert that this instruction wipes out the statute which, it is claimed, gives the failure to present the mere effect of a tender, but not the effect of destroying the obligation. Section 5323 of the General Statute of 1909, being section 77 of the negotiable instruments law of 1905 (Laws 1905, ch. 310, § 77), is as follows:

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, and has funds there available for that purpose, such ability and willingness are equivalent to a tender of payment upon his part; but, except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

Here ability and willingness to pay are expressly made equivalent to a tender, and a tender merely and only stops interest; a tender is not payment, but merely an offer to pay. But this instruction was not, we think, materially erroneous, in view of the very peculiar circumstances of this case. It is true that the appellees were careless or overconfident in the cashier of the Ellinwood bank or they would have seen that the proper note was surrendered when the payment was made, or

at least when it matured.   But they had been dealing with and trusting the cashier, leaving with him their papers, including the six renewals of the indebtedness for which the note sued on was executed, and were told that they could get this back by calling for it at the bank, and they had no knowledge that it had been transferred, much less that it had been extended.   They continued in the *bona fide* belief that the note had been paid until after their trusted home bank had failed and gone into the hands of a receiver.   Until after the failure the appellant gave no intimation that the note was unpaid, that it had been transferred or that the appellant claimed any interest in it, or that it had been dishonored.   It is clear that had the note been presented at maturity there would have been no difficulty whatever in procuring its payment.   The money was there, had been there several weeks, and had been receipted for by the original payee, whose cashier had requested payment in advance of his customer, who had a good balance then on deposit.

The jury found that the Bank of Ellinwood or its officers intended to collect the note in controversy when the payment of June 21, 1907, was made by Mr. Dick, and that after the failure of the bank the first demand was made on the appellees, when Mr. Dick stated that he had paid the bank all he owed it.  Also the following:

"Ques.  Did the Bank of Ellinwood have any authority from the New England National Bank to collect the note sued on before it was due?  Ans.  Yes.

"Q.  If you answer the preceding question in the affirmative, then you may state when such authority commenced and how it was created.  A.  By common agreement between banks, according to testimony of George B. Harrison, cashier of New England National Bank."

Mr. Harrison was shown to have testified concerning another of the collateral notes (in another case) that he "simply received it as collateral and held it and

17—84 KAN.

looked to the Bank of Ellinwood to collect it." He testified in the court below as follows:

"Ques. You said something about, if they should be collected—these collateral notes—you expected that they would be paid at Ellinwood; how is that? What procedure would you follow, Mr. Harrison? Ans. If the Bank of Ellinwood was doing business we would send it to them, to the Bank of Ellinwood, for collection —if we did not want to send it to them we would send it to some other bank at Ellinwood.

"Q. And as a part of the banking business was making collections on collaterals? A. Yes, sir.

"Q. That was the rule between you, was it? A. Yes, we exchanged collaterals, and I presume you would call it the rule.

"Q. Under the rule, Mr. Harrison, the makers of the paper had the right to pay their notes when they matured, had they? A. Oh, yes.

"Q. Or at any other time prior to maturity? A. I presume a man has a right to pay his note any time he wants to."

The twenty-sixth finding was that the appellant consented that the note should be paid by the appellees before maturity, "according to custom existing between banks, according to the testimony of George B. Harrison, its cashier." It is not material whether this finding was or was not supported by the evidence, in view of the other finding of agency, which, as shown *supra*, had support in the testimony of the cashier here referred to. If there was an agency the appellant's consent for the agent to act must have followed as a matter of course. But, aside from this, the appellant was in the position of knowing that the note matured September 9, 1907, that it was payable at the Ellinwood bank, and that the makers had by making it payable there, in law, ordered that bank to pay it at maturity for their account. (Laws 1905, ch. 310, § 94, Gen. Stat. 1909, § 5340.) With this knowledge the appellant neither presented the note, nor notified the makers of its nonpayment, until the bank had failed and their

money had been mingled with and gone into. its general assets.

The findings of the jury as to agency were, as herein shown, supported by the evidence, and the judgment of the trial court is affirmed.