12679

FEDERAL INTERMEDIATE CREDIT BANK v. EPSTIN ET AL.

(148 S. E., 713)

Mr. *George W. Beckett,* for appellants, 

*Messrs. Randolph Murdaugh,* and *D. W. Robinson,* for respondent,

June 12, 1929.

The opinion of the Court was delivered by Mr. Justice Stabler.

On January 15, 1926, the defendants executed and delivered to the Beaufort Bank, of Beaufort, S. C., their promissory note in the sum of $626.25, due June 15, 1926. The note was payable at the Beaufort Bank, and contained a provision that such bank was authorized to apply, on or after maturity, to the payment of the note, any funds in the bank belonging to the makers. By the terms of the note, the makers waived demand, presentment, etc. On April 13, the Beaufort Bank indorsed this note to the South Carolina Agricultural Credit Company, which, in turn, indorsed it before maturity to the Federal Intermediate Credit Bank of Columbia, the plaintiff in this case. When the note fell due, June 15, 1926, the makers had on deposit in the Beaufort Bank sufficient funds to meet its payment. On June 24, the defendants sent by mail to W. E. Richardson, president of the Beaufort Bank, a check on their account at the bank for payment of the note. Although the bank received and accepted the check, and charged the same against the makers' account on July 2, no remittance was made to the holder of the note. On July 12, 27 days after the note fell due, the bank was taken over by the State·Bank Examiner and has not since been open for business. The plaintiff thereafter, as the holder and owner of the note, brought this action for collection against its makers. The defendants pleaded that the note

was payable at the Beaufort Bank and that they paid it there on June 24, 1926.

On trial of the case, both plaintiff and defendants asked for a directed verdict. Honorable J. W. DeVore, the presiding Judge, overruled the defendant's motion, but directed a verdict for the plaintiff for the principal sum of the note, disallowing interest, attorney's fees, and costs, because the defendants at the time the note fell due had on deposit in the Beaufort Bank a. sufficient sum to pay the debt. The main question presented by the appeal is: If the holder of a note payable at a bank, where the maker has sufficient funds on deposit at its maturity to meet payment, does not present it there for payment when due, and the note is not paid, and the funds are lost through subsequent failure of the bank, who must bear the loss?

It is well-settled law that the presentment of a note for payment at a place specified is not a condition precedent to an action against the maker, nor is it necessary in such action that presentment be pleaded or proved. *McNair v. Moore,* 55 S. C., 435, 33 S. E., 491. 74 Am. St. Rep., 760. It is also held in most jurisdictions that loss resulting from a failure of a bank at which a note is payable, and in which the maker has sufficient funds deposited at its maturity to pay the debt, does not fall upon the holder, even though he fails to present the note for payment at such bank. See cases cited in note to *Binghampton Pharmacy v. Bank* (Tenn.), 2 A. L. R., 1377.

The exception to the great weight of authority is our own case of *Bank of Charleston Nat. Banking Ass'n v. Zorn,* 14 S. C., 444, 37 Am. Rep., 733, decided in 1881. That case involved a note payable to Wroton & Dowling, commission merchants, at their office in the City of Charleston. The note was assigned by them before maturity to the Bank of Charleston National Banking Association as collateral security to their note for money borrowed from the bank. The defendant Zorn had with Wroton & Dowling at the matur-

ity of the note and until their subsequent failure, sufficient funds for payment of same, but the holder did not present it for payment when due nor thereafter before the failure, and the funds were lost. A verdict was rendered for Zorn and an appeal was taken by the bank. With respect to the question of presentment at the time and place specified in the note, the Court said:

"The last exception alleges error in that the Judge charged that the bank was bound to demand payment at the office of Wroton & Dowling, etc. The English commercial law, when strictly applied and enforced, seems to require that demand shall be made at the place of payment, when specified in the note, either on the day of payment or at some future time, and without this, no default arises on the part of the maker for non-payment."

The American doctrine, however, is not so rigid; demand is not a precedent condition here, and suit may be brought against the maker under that doctrine without presentment or demand at the place mentioned, subject, however, to the right of the maker to prove by way of defense that on the day and at the place specified he had the necessary funds to make payment, and that if any loss has occurred it should be the loss of the holder of the note and not his; in other words, the burden of proof is shifted. Instead of requiring the plaintiff to prove that he made demand, the maker, defendant, is required to prove that he deposited the money according to the terms of the note, and that it was lost to the plaintiff on account of his failure to demand it at the proper place. *Wallace v. McConnell*, 13 Pat., 136, 10 L. Ed., 95; Story on Promissory Notes, §§ 227, 228, and note to page 287; *Wolcott v. Van Santvoord*, 17 Johns. (N. Y.), 248, 8 Am. Dec., 396; *Clarke v. Gordon*, 3 Rich., 313, 45 Am. Dec., 768.

Now, if the matter complained of in the last exception had stood alone in the Judge's charge, the exception would be well founded, as the charge in this respect is not in accordance with the above principles; but, when the whole

charge on this branch of the case is taken together, as appears in the brief, it is apparent that the Judge properly qualified the doctrine as a whole when he instructed the jury "that if they believed the plaintiff was guilty of laches in not demanding payment of the note at the office of Wroton & Dowling before their failure, and that plaintiff would have received the money if the note had been presented, and by their failure to do so the defendant lost the money, they should find for the defendant."

This rule is in accord with the doctrine announced by Judge Story in his Treatise on Promissory Notes (5th Ed.), p. 286, and is still of force in this State, unless in conflict with the provisions of the Negotiable Instruments Law, adopted in 1914, the several pertinent sections of which we shall now consider.

Section 87, appearing as Section 3738, 3 Code 1922, is as follows: "Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon."

This section in no way conflicts with the rule announced in the Zorn case; on the contrary, it is in harmony with that rule, as it gives to the bank at which the note is payable specific authority, if such authority was lacking otherwise, to pay such instrument and charge same to the account of the maker.

It is urged, also, in favor of the rule that the provisions of this section, making such a note "equivalent to an order to the bank to pay the same for the account of the principal debtor thereon," lay upon the holder of a note the same duty as that placed upon the holder of an ordinary check, and that if the note is not presented at the bank where payable by the holder at maturity, or within a reasonable time thereafter, the maker, as in the case of the drawer of a check, "will be discharged from liability thereon to the extent of the loss caused by the delay." Section 186 (Acts 1914, p. 695). It is urged, on the other hand, that this section is not decisive of

the question, unless the language used be so broadly construed as to destroy other provisions of the law.

It is contended that, under a correct interpretation of the provisions of Section 70 of the Act, appearing as Section 3721 of our Code, a different rule applies to the holder of a note from that applying to the holder of a check. This section provides in part: "Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part."

It is argued that, the maker of a note being primarily liable thereon, and presentment therefore not being necessary in order to charge him with liability, the holder's failure to present the note cannot constitute negligence or laches on his part. In the case of *Binghampton Pharmacy v. First National Bank,* 131 Tenn., 711, 176 S. W., 1038, 2 A. L. R., 1377, the facts of which were very similar to those of the case at bar, this question was fully considered. The Court in that case, holding that the question was one determinable by a correct interpretation of the pertinent provisions of the Negotiable Instruments Law, said:

"The difference between the drawer of a check and the maker of a note is that the latter is primarily liable on the instrument, while the former is not. The maker of a note 'by the terms of the instrument is absolutely required to pay the same.' That is to say, he is primarily liable on the instrument. Section 192 [Acts 1899, c. 94]. The drawer of a check or bill of exchange is not primarily liable, but he engages that if the instrument be dishonored he will pay the amount thereof to the holder or subsequent indorser, who may be compelled to pay it. Section 61.

"The provisions of Section 70, therefore, which we have quoted above do not apply to the drawer of a check or bill of exchange, while they do apply to the maker of a note.

"By Section 186 of the Acts of 1899, it is made the duty of the holder of a check to present the same for payment 'within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay.'

"There is therefore an absolute duty resting upon the holder of a check to present the instrument for payment at the place where it is payable, within a reasonable time. If he breaches this duty, the drawer is discharged from liability to the extent he is damaged by the breach.

"As between him and the maker of a note, no such duty rests upon the holder of a note with respect to presentment. By the terms of the Act (Section 70) presentment is not necessary to charge the person primarily liable on the instrument.

"The obligation of the maker of a note is not a conditional promise to pay only at a specified place, but is a promise to pay generally, even though a place of payment is named."

See, also, *Adams v. Hackensack Improvement Commission,* 44 N. J. Law, 638, 43 Am. Rep., 406.

We are impressed with the cogent reasoning of the Tennessee Court, and think that its interpretation of the Negotiable Instruments Law is correct, and that any different interpretation with respect to the point at issue would be inconsistent with the legal effect of the provisions of Section 70 of the Act. As this Act supersedes any prior conflicting rule of law, whether created by legislative enactment or declared by judicial decision, the rule announced in the *Zorn case,* although in force in this State up to the enactment of the Negotiable Instruments Law, has been rendered inoperative by the provisions of that Act.

In addition, the makers of the note in the present case specifically waived presentment for payment and thereby agreed as a part of the contract that no presentment by the holder at any time or place would be required, and such waiver operated to relieve the holder of the duty of making

presentment, even if it should·be held that, in the absence of waiver, such duty actually· existed under the law. For this reason, also, the contention of the appellants cannot be sustained.

As it is agreed that the makers of the note had at the Beaufort Bank at the time of its maturity, and up to the date of the bank's failure, sufficient funds to meet the payment of the note, and·as there was evidence of willingness on their part to make such payment, the Circuit Judge was correct in limiting the verdict for the respondent to the principal sum of the note.

The defendants have also filed an exception to the order of the trial Judge settling the case for appeal.

They charge the Court with error in ordering, on motion for respondent's attorney, that the testimony be printed in the case, contending that the ·facts were undisputed, and therefore it was in violation of Rule 4 of the Supreme Court to print the testimony and the cost of printing it should be taxed against the respondent.

Section 7 of Rule 4 of this Court provides that "any party aggrieved by the order of settlement, may appeal therefrom and insert in an appendix to the case as settled, such matters as may be necessary for the proper consideration of his appeal." The appellants having failed to present, as provided by the rule, such necessary matters, the Court is unable to decide the question raised by this exception.·

All exceptions are overruled and the judgment of the Circuit Court is affirmed.

Messrs. Justices Blease and Carter concur.

Mr. Justice Cothran (dissenting) : This is an action by the plaintiff, as second indorsee of a note given by the defendants to the Bank of Beaufort, transferred by it before maturity to the South Carolina Credit Company, and by it, also before maturity, to the plaintiff bank. The note was dated January 15, 1926, payable June 15, for $626.25. The note was payable *to the Bank of Beaufort, at the Bank of*

*Beaufort,* and in addition contained this provision: "The bank at which this note is payable is hereby authorized to apply on or after maturity to the payment of this note any funds in said bank belonging to the maker, indorser, surety, guarantor or any of them." It contained the following provision also: " * * * . The maker, indorser, surety or guarantor of this note, severally waives demand, presentment, protest and notice of protest."

The first transfer was made on April 13th, and the second soon thereafter, both, as stated, prior to the maturity of the note. At the date of the maturity of the note the makers had upon deposit with the Beaufort Bank more than sufficient funds to meet the note, and in addition to that fact, on June 24th, transmitted to the bank a check upon the deposit account for the amount due upon the note. The defendants had no notice of the transfers of the note above referred to.

The Beaufort Bank received the check so transmitted and charged it to the account of the defendants, but made no remittance thereof to the holder, the plaintiff bank. No communication between the plaintiff bank and the Beaufort Bank, or between the plaintiff bank and the makers of the note, appears to have been made between the time of the transfer and the maturity of the note or at any time thereafter prior to the failure of the bank. On July 12th, 27 days after the maturity of the note, the Beaufort Bank closed its doors and was taken over by the State Bank Examiner, under whose direction it has since been in process of liquidation.

On July 14th, two days after the closing of the Beaufort Bank, the plaintiff bank notified the defendants that it held the note and demanded payment. Thereafter, at a time not stated in the transcript, the present action was commenced. Upon the trial before his Honor, Judge DeVore, and a jury, a verdict was directed in favor of the plaintiff; his Honor basing his order upon the following ruling:

"I think that the defendant Mr. Epstin has made a mistake when he failed to get his note at the time he paid this money to the bank, when he made this mistake, and whenever a man has got a note due, and he ought to pay it to the party who has got his note, and when you fail to do that, you have failed to perform your duty, and the evidence shows that the note is in the third party's hand in due course, and for a valuable consideration, and in my judgment they have a right to maintain this action."

From the judgment entered upon the verdict so directed, the defendants have appealed upon exceptions which fairly raise the matters hereinafter considered. The holding of his Honor, the Cirucit Judge and the opinion submitted by Mr. Justice Stabler proceed upon entirely different grounds; the former, upon the ground that the defendants were negligent in making payment to the bank without insisting upon the production of the note (a position that the writer vainly endeavored to impress upon the Court in the case of *Cogswell v. Cannady*, 135 S. C., 365, 133 S. E., 834) ; the opinion, upon the ground that the plaintiff was under no obligation to present the note for payment at the bank. I will consider the ground upon which the submitted opinion proceeds :

Practically, I think, without exception, the authorities cited by the learned justice to sustain his contention are instances of notes payable to third persons, *at particular banks;* in the case at bar the note was not only payable *at* the Beaufort Bank, but *to* that bank, and contained a provision that the bank could apply any funds in its possession belonging to the makers, at or after the maturity of the note, towards payment of the note. While these circumstances of differentiation may not alter the legal principles generally applicable, I think that they are to be considered upon the issue of due care, as affecting the negligence of the respective parties. When that note fell into the hands of the plaintiff bank, it was charged with notice that the makers, without notice of the transfer to it, would make payment to the bank; that the

bank had the power to charge the note to the deposit account, under the law and under the specific terms of the note; common care, consideration of the situation of the makers, should have suggested notice prior to the maturity, that it held the note. It did nothing until the bank broke, and within two days thereafter notified the makers to pay them.

It is conceded that, but for the provisions of the Negotiable Instruments Law (Code, § 3652), our own case of *Bank v. Zorn,* 14 S. C., 444, 37 Am. Rep., 733, would control the issue. It is contended that Section 70 of that statute has entirely subverted the principle announced in the *Zorn case.* That section is:

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

The provision that presentment for payment is not necessary in order to charge the person primarily liable on the instrument is not at all in conflict with the Zorn decision, which specifically states: "* * * Demand is not a precedent condition here [in America] and suit may be brought against the maker * * * without presentment or demand at the place mentioned. * * *"

I think that the latter part of the section, "* * * But if the instrument is, by its terms, payable at a special place, and he [the maker, I interpolate] is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part," is inconsistent with the decision in the *Zorn case;* for in the *Zorn case* it is said: "* * * Subject, however, to the right of the maker to prove by way of defence that on the day and at the place specified he had the necessary funds to make payment, and

that if any loss has occurred it should be the loss of the holder of the note and not his."

While the statute provides that "such ability and willingness are equivalent *to a tender of payment* upon his part," with the necessary consequencies of such tender, and not that the maker would have the right to set up such ability and willingness as a defense, and recoup the loss he may have sustained. So that the pivotal inquiry is the effect what may be considered a refusal of the tender so made; it was exactly as if the plaintiff bank had been present in the Beaufort Bank and had refused to accept what it had agreed to accept.

Under the law, and under the express terms of the note, by which the transferee bank is bound, the note, payable *to* the Beaufort Bank and *at* that bank, was the equivalent of a check by the makers upon their deposit account in the Beaufort Bank. Section 87 of the Act provides: "Where the instrument is made payable at a bank it is equivalent to an order [on] the bank to pay the same for the account of the principal debtor thereon."

If the payee of the note, the Beaufort Bank, or its transferee or indorsee, the plaintiff bank, had the right to insist upon this provision, clearly for its benefit and adding to the strength of the note, surely the makers should be allowed the benefit of any right accruing to them out of a provision by which they were bound. The tender referred to in the statute was necessarily a tender according to the terms of the contract, a check upon the deposit account of the makers, which the holder of the note was obligated to accept, provided of course, there were sufficient funds with which to meet it on deposit.

Under the statute it was a tender regardless of whether the holder was present with the note or not, or whether the holder had transmitted it to the bank or not. The holder is constructively held to have refused a tender of what the contract permitted and required. There is no question but that the makers had then sufficient funds to meet the check, and

if by the holders' constructive refusal to accept what had been agreed upon, the loss should not fall upon those who had fully complied with their engagements in favor of one who had not. By the plaintiff bank's refusal of the tender that which stood for the note has been swallowed up in the maelstrom.

There is not the slightest explanation of the dilatoriness of the plaintiff bank in demanding payment of the note. It fell due on June 15th, and if it had been presented where it showed upon its face it was payable, out of funds of the makers on deposit, at any time between June 15th and July 12th, it would unquestionably have been paid. It did not wake up until the 14th, after the bank had closed its doors, then for the first time it notified the makers that they would have to pay the note a second time. The makers undertook to have the money in the bank on June 15th; they had it there, and there it remained until the crash came. I have never seen a clearer case for the application of the maxim *"Leges subveniunt vigilantibus non dormientibus."*

I fail to follow the reasoning of the Tennessee Court, upon which Mr. Justice Stabler so confidently and approvingly relies. The learned justice in that case, *Binghampton v. Bank*, 2 A. L. R., 1377, argues that because *a check* is not an instrument upon which the drawer is primarily liable, Section 70, dispensing with presentment for payment, has no application to such an instrument. If a check, therefore, is not relieved from the necessity of presentment for payment, under Section 70, then that necessity exists, and attaches to a check as well as to a note payable at a bank which by the statute is made the equivalent of a check.

It is significant that the Tennessee Court, in previous decisions, had taken the opposite view of that announced in the *Zorn case* by this Court. It is but natural that they should have inclined to the interpretation of the statute of in harmony with those decisions, as I feel inclined to the interpretation in harmony, in part, at least, with the decision in the

*Zorn case.* I may say that I doubt very much the conclusion that the drawer of a check assumes no primary obligation. It is not an obligation of the bank upon which it is drawn until accepted by the bank upon presentation. Acording to the principle announced, up to the fact of acceptance it is an obligation of no one. That will hardly be contended. The learned justice says: "The drawer of a check * * * engages that if the instrument be dishonored he will pay the amount thereof to the holder or subsequent indorser, who may be compelled to pay it."

If that were the sum total of his engagements, the conclusion would be unassailable; but it is not. The statute provides that, in addition to the foregoing, the drawer engages "that on due presentment the instrument *will be accepted or paid* or both, according to its tenor, *and* that if it be dishonored," etc. It is the drawer's primary obligation before it has ever been presented to the bank. If that note, payable at the Bank of Beaufort, was equivalent to a check upon that bank, there being no limitation upon its equivalency to a check, I do not see why it should not be governed by the same rule as is applied to the holder of a check, which makes it his duty to present it in a reasonable time, and which makes him the loser if he should be negligent in the performance of that duty. There can be no doubt that, if the transferee bank had notified the makers that they held the note, the note would have been paid; if it had been presented at the bank, it would have been paid. In all fairness, who should be the loser under this double neglect?

The rule is stated by Story on Promissory Notes (7th Td.), §§ 227, 228, that, if the maker of a promissory note suffers any loss or inquiry by the want of due presentment at the specified place, to the extent of that loss or injury he will be discharged as against the holder. He states that, if the note is payable at a bank, "and the acceptor or maker had funds there at the time, which have been lost by the failure of the bank, then and in such case the acceptor or maker will

be exonerated to the extent of the loss or injury so sustained."

Where "the maker of a check has on deposit in a bank money sufficient to pay the same, and the" holder "fails to present it for payment within a reasonable time, during which time it would have been paid if presented, and the bank fails between the time of drawing and the presentation thereof, the" maker "is discharged from liability to the extent of the injury he may have sustained by reason of such failure." *Lester-Whitney Shoe Co. v. Oliver Co.,* 1 Ga., App., 244, 58 S. E., 212.

I think, too, that this consideration is worthy of notice: It is always deemed an advantage to the payee of a note to make it payable at the bank in which the maker is depositing. Under the statute it becomes equivalent to a check upon the maker's deposit, and necessarily adds strength to the note in the form practically of an assignment of the deposit as collateral security, and, under the well-established rule, a payee whose negligence has led to a dissipation of the collateral should suffer the loss occasioned thereby.

In *Montague v. Stelts,* 37 S. C., 200, 15 S. E., 968, 34 Am. St. Rep., 736, the syllabus is: "Where a creditor receives from his debtor, as collateral security, claims against third persons, the creditor becomes a bailee, and must use ordinary diligence, such as persons usually exercise in reference to their own matters, in endeavoring to collect the collaterals, and is responsible for losses resulting from his failure so to do."

It is suggested that, as the note contains a waiver of presentment for payment, the transferee bank was under no obligation to present the note at the bank, and cannot be charged with the consequences of not having done so. In view of the fact that the maker of a note is not entitled to presentment for payment, and that an indorser, surety, or guarantor is, it requires no argument to demonstrate that the clause was simply intended to protect the payee from a de-

fense, on the part of such parties secondarily liable, that there had been no presentment for payment or notice of non-payment communicated to them.

I think, therefore, that the judgment should be reversed.

MR. CHIEF JUSTICE WATTS concurs.