No. 14,096.

EMPLOYERS MUTUAL INSURANCE COMPANY *v.* BOARD OF
COUNTY COMMISSIONERS OF THE COUNTY OF PITKIN.
(78 P. [2d] 380)

Decided December 6, 1937.   Rehearing denied April 11, 1938.

177

178

Messrs. PONSFORD & PENDER, for plaintiff in error.

Mr. FRANK DELANEY, Messrs. PERSHING, NYE, BOSWORTH & DICK, for defendant in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THIS is an action against Pitkin county, Colorado, to recover on securities issued by the county and consisting of three of its bonds with one interest coupon attached to each. The district court having entered a judgment in favor of the county, the bondholder brings the case here for review and asks for a reversal.

The bonds are refunding bonds. These and the coupons are in the usual form, all maturing on October 1, 1931, and containing the county's absolute promise to pay. Each instrument constitutes a complete contract in itself, and contains a provision that it is payable at the office of the county treasurer or at the banking house of Kountze Brothers in New York City at the option of the holder upon presentation of the particular bond or coupon. The securities are admittedly valid. Moreover, a tax had been duly levied and collected for the purpose of raising the sum requisite to pay these and certain other bonds and coupons maturing on October 1, 1931. It is conceded that of these funds an amount sufficient to pay all securities falling due on this date had been deposited to the credit of Pitkin county by the county treasurer in the above-named banking house of Kountze Brothers at New York City.

Originally the pleading of the plaintiff bondholder contained allegations to the effect that a demand for payment was made upon, and was refused by, the county treasurer in Aspen, as well as allegations that the bonds and coupons were previously presented for payment at the Kountze Brothers bank in New York and that the payment thus demanded was then and there refused. Kountze Brothers went into receivership on October 13, 1931. The record demonstrates conclusively that the plaintiff was in error when making its original allegations to the effect that the securities had been presented for payment at Kountze Brothers'. As a matter of fact, the bondholder delivered the securities in question to

the First National Bank of Denver for collection on October 15, 1931. The bank, like many other banks, at various times had in due course received bonds and coupons for collection, including securities payable at Kountze Brothers'. The First National Bank's correspondent in New York was the New York Trust Company. On October 13, two days before, the Trust Company had sent the First National Bank a telegram stating that the former "will charge and hold all coupons payable at Kountze Brothers pending further information regarding receivership." Plainly, this did not relate to the securities involved in the case at bar, for the bonds and coupons here sued upon could not, under the evidence before us, have been in New York at that time.

The uncontradicted evidence shows that no presentation or demand for payment of the securities here involved was made in New York City at all, but that on October 18 or 19, 1931, the bondholder made demand upon the county treasurer at his office in Aspen, the county seat of Pitkin county, for payment of the amount due, and that payment was refused.

Such being the state of the evidence at the trial, the bondholder asked and obtained leave to amend its pleadings accordingly, over the objection of the county, which assigns cross-error thereon. In other words, the issue, in so far as it dealt with Kountze Brothers, was entirely eliminated, and the pleadings were limited to the demand made in Aspen.

From the standpoint of the county it is, of course, all-important to determine—on its aforesaid assignment of cross-error—whether the trial court erred in permitting the plaintiff's pleadings to be amended so as to conform to the plaintiff's proof, which in the present instance is not controverted in the slightest degree. If there was reversible error in that, it would be necessary to restore to the plaintiff's complaint and replication the allegations as to presentation and demand for payment in New York City, allegations which in the light of undisputed

evidence were erroneous and untrue. On the other hand, if the district court did not commit reversible error in that regard, the elaborate arguments based upon Kountze Brothers' alleged relation of agent to the plaintiff bondholder are beside the question. This point, then, as to whether or not the amendment was reversible error, is the first one calling for a decision.

1. It is elementary that a trial court has the right and duty to exercise its sound discretion in permitting or refusing the amendment of the pleadings in any case to correspond with the evidence adduced. Pleadings are the means provided by the law to enable a court to ascertain the claims of the respective parties to a justiciable controversy. Such claims are to be presented according to the actual facts. The liberal provisions of our Code for amending pleadings were consciously framed for the purpose of preventing falsehood or mistake from overcoming truth and justice by the sheer rigidity of ancient forms. In view of the clear, convincing and conclusive evidence, leading to the inevitable inference that counsel for the plaintiff originally labored under a wrong conception of the facts, it was proper for the trial court to allow the plaintiff to amend by substituting the truth for the previous error. Not only was it an exercise of reasonable discretion to allow it, but it would have been an abuse of discretion not to do so. We therefore hold the cross-error to be without merit.

2. Taking the pleadings, then, in their amended version, and taking the evidence according to the actual facts shown by unrefuted contemporaneous documents and by the failure of the county to contradict any material part of the case as presented by the amended pleadings and the evidence in support thereof, we do not understand how the trial judge, when about to enter judgment in favor of the defendant county, could justify by the record before us the words he uttered as follows:

"Now in this case the bonds were payable at the office of the county treasurer or at Kountze Brothers, at the

option of the holder. The holder remaining quiet, it became the duty of the treasurer to do one of the two things and he sent the money to Kountze Brothers. It was the option of the bondholder that was exercised and not that of the Treasurer. He had none. Judgment will be for the defendant County, with costs.''

The bonds and coupons here involved are admittedly negotiable instruments. Under the uniform negotiable instruments law ('35 C. S. A., chapter 112; C. L. '21, page 1121, chapter 66, sections 3818 et seq.) as interpreted by the overwhelming weight of authority the bondholder was not required to present the bond or coupon at maturity in order to fix the absolute liability of the maker.

''The general rule * * * is that a failure on the part of the holder to present the paper for payment on the day of maturity will not discharge the acceptor of a bill or the maker of a note; and this is true, even where the paper is made payable at a particular bank, or some other specified place; and the acceptor or maker can show that he had deposited sufficient funds to meet his obligation at the stipulated place of payment. And this rule is rigorously enforced in the United States, even where the acceptor or maker has provided sufficient funds at the stipulated bank of payment, and the bank has failed subsequent to the maturity of the paper. The loss in such case falls on the acceptor or maker, respectively, and the holder can nevertheless enforce payment of the bill or note. But where a place of payment is specified in the instrument, and the acceptor or maker can prove that he was at the place, on the day of maturity, ready to pay the amount, or had so deposited sufficient funds to enable the bill or note to be fully honored; the failure of the holder to present for payment will prevent any subsequent recovery of damages and costs, and subsequently accruing interest.'' Tiedeman, Bills and Notes, page 303, section 114. Compare: *Binghampton Pharmacy v. Bank,* 131 Tenn. 711, 176 S. W. 1038; *Federal Intermediate Credit Bank v. Epstin et al.,* 151 S. C. 67,

148 S. E. 713; *Hanover Nat. Bank v. Norris,* 151 S. C. 135, 148 S. E. 718; *Bank of Montreal v. Ingerson,* 105 Ia. 349, 75 N. W. 351 (expressly overruling *Lazier v. Horan,* 55 Ia. 75; 7 N. W. 457); *Adams v. Hackensack Improvement Commission,* 44 N. J. L. 638; *Mullen Corp. v. School District,* 99 Mont. 388, 43 P. (2d) 902.

█ It is made plain by these and other authorities, especially by the ones which have appeared after the enactment of the uniform negotiable instruments law, that, unless negotiable paper is sent by the holder, for collection from the maker, to the very bank designated as the place of payment, such bank is the agent of the maker, and not of the holder, in relation to any deposit by the maker, when there is no evidence of an express authority.

*New England Nat. Bank v. Dick,* 84 Kan. 252, 114 Pac. 378, cited by Pitkin county, presents peculiar facts which distinguish it from the case at bar.

█ 3. Is there estoppel pleaded and proved? Assuming, but not deciding, that estoppel is sufficiently pleaded, we fail to find in the record any such convincing evidence as is required before this affirmative defense can be considered as established. No written or spoken words of the holder have been shown. It is argued, however, that estoppel results from a universal course of business constituted by the sending of all bonds and coupons to New York for payment there. We have already called attention to the fact that each bond or coupon is a separate contract. But the county treasurer himself, who is the only first-hand witness on the supposed universal custom, testified that "the *majority* of the coupon bonds were paid in New York." In other words, the very evidence offered fell short of clearly establishing a universal custom as claimed. Besides, the finding of the trial court, quoted above, says nothing about estoppel, but puts the matter wholly upon an exercise by the treasurer of the option, granted the holder, to have payment made in New York. Of course there was no evidence that the treasurer had been given

such an extraordinary authority. He testified that he had no instruction from the holder here; that this holder was not among those whom he requested to make arrangements for paying at his office and who refused his request. There is not one word of testimony as to whether—assuming the option to have been exercised—the holder failed to present the securities for payment within a reasonable time after maturity. In the light of the accepted view that no presentation at all is necessary to fix the maker's primary liability, it is obvious that such a question is wholly irrelevant and immaterial. There is no substantial evidence of estoppel in the record before us, nor anything else that could sustain the judgment rendered below.

For the reasons above stated, the judgment must be reversed and the case remanded to the district court with directions to enter findings and judgment in favor of the plaintiff.

Judgment reversed with directions.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD dissent.

On Petition for Rehearing.

MR. JUSTICE BOUCK.

In its petition for rehearing the county voices for the first time the contention that the plaintiff in error mistook its remedy and that the only proper court action would be mandamus. The dissenting opinion of Mr. Justice Hilliard, now being filed, adopts the contention, as well as the citation of the following cases said to support the position: (1) *Board of Com'rs v. Sims,* 31 Colo. 483, 74 Pac. 457; (2) [1]*Forbes v. Board of Com'rs,* 23 Colo. 344, 47 Pac. 388; (3) *Board of Com'rs v. People,* 16 Colo. App. 215, 64 Pac. 675; (4) *Denver v. Bottom,* 44 Colo. 308, 98 Pac. 13. The dissenting opinion adds to these the following cases, not cited by plaintiff in error:

---
[1]See "Note by the Court" at the end of this opinion.

(5) *Berkey v. Board of Com'rs,* 48 Colo. 104, 110 Pac. 197; (6) *Rio Grande Co. v. Orchard District,* 64 Colo. 334, 171 Pac. 367; (7) *Henrylyn Irr. Dist. v. Thomas,* 64 Colo. 413, 173 Pac. 541.

██ ██ The above cases, in so far as they are relevant, recognize an exception—and seem to approve a money demand action—where public securities are payable out of a certain fund, as here, but where, after the fund has been duly provided, there has been a diversion thereof. This is the present case. The proceeds of the tax duly levied and collected were diverted by the county treasurer as legal custodian thereof by sending the money to the Kountze Brothers bank in New York City without any request from the plaintiff in error to do so, as already stated in our original opinion, resulting in the loss of those proceeds by the insolvency and bankruptcy of that bank. It is self-evident from a reading of the statute that, having once levied and collected a tax sufficient to pay the securities involved herein, the county had exhausted its power and could not be mandamused to levy and collect another tax, since there is no longer a "clear legal duty" to do so. *Gunter v. Walpole,* 65 Colo. 234, 176 Pac. 290. Nor could the county treasurer be mandamused, for by voluntarily sending the specific funds to a failing bank in New York he has diverted the funds which it was once his clear legal duty to pay out, but which he can no longer either willingly or unwillingly pay out and which in fact he has refused to pay because those funds were lost as aforesaid in the New York bankruptcy.

██ But there are three even stronger reasons for not changing our decision, namely: First, the point was neither raised in the trial court nor assigned as error in this court, the only cross-errors assigned by the county being as to the court's permitting the complaint to be amended; second, the case was prosecuted and defended on an entirely different theory from the one now attempted to be raised by petition for rehearing, and the

county is bound by its trial-court theory; third, even if we should concede—as we cannot—that the cited cases support the reasoning of the dissenting opinion, the truth is that those cases were decided before the Uniform Declaratory Judgments Act (S. L. '23, c. 98, pp. 268-271; '35 C. S. A., vol. 3, c. 93, §§ 78-92) became the law of this state, since which time this court is permitted to declare and adjudge rights and liabilities under a given state of facts irrespective of whether we directly supply remedies to enforce them. In our original opinion we have not undertaken to dictate the manner in which the judgment shall be satisfied. That particular subject matter is not before the court at his time.

The petition for rehearing is denied.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD dissent.

Note by the Court. In Hockaday v. County Com'rs, 1 Colo. App. 362, 374-376, 29 Pac. 287, 291, cited in Forbes v. Board of Com'rs, supra, it was said: "It is urged in argument, by counsel of defendant in error, that this form of action would not lie. He says, 'Another objection to plaintiff's recovery in this action is, that the warrants are payable out of a particular fund and are not a charge against the county in this action' * * *. The first, and perhaps the only answer necessary to this position, is, that no such question was raised in the court below * * *. In the stipulation of counsel it is conceded that the warrants in controversy were presented to the treasurer and payment demanded, 'and that payment thereof was refused for want of funds.' Here is a conclusive and binding agreement entered of record, that there was no money in the road fund for the payment of the warrants. Counsel for plaintiff, knowing this fact in advance, could not be required or expected to proceed by mandamus, which could only be available with the money in the treasury, and upon proof that it was there, and of a refusal to pay." The record in the case at bar shows affirmatively that the money had been lost by the action of the county treasurer in sending the funds out of the state.

MR. JUSTICE HILLIARD dissenting.

Considering the genesis, form and status of the obligations in action, the duty of defendant in relation thereto, what it has done in discharge thereof, and that money judgment against defendant is the relief sought, I think

plaintiff not only has failed to state a cause of action, but by its allegations has shown it is without grounds of complaint against defendant. One reason is that an action for a money judgment, the premises in mind, does not lie. Another reason is that such a judgment, denied at trial, but ordered by this court, will, as I conceive, only amount to a judicial gesture. A third reason is that before this action was instituted, defendant had complied with every duty the law enjoined upon it in the matter.

It appears that March 16, 1916, the board of county commissioners of the county of Pitkin, proceeding under the provisions of an ''act to enable the several counties of the state to refund their bonded indebtedness,'' approved April 12, 1915 (Session Laws 1915, p. 180), issued its certain interest-bearing refunding bonds, maturing in annual installments, as required by the act, of which those here, due October 1, 1931, were part; that by section 6 of the act, the board of county commissioners was required to make an annual levy of a sufficient tax upon all taxable property in the county fully to discharge the interest accruing on the bonds, ''and for the ultimate redemption of such refunding bonds they shall levy annually such a tax upon all taxable property in such county as will create a fund sufficient to discharge each annual installment of such refunding bonds at the maturity thereof, which fund shall be called the redemption fund. All taxes for interest on and for the redemption of such bonds shall be paid in cash only and shall be kept by the county treasurer as a special fund, to be used only in payment of the interest upon and for the redemption of such bonds, and such tax shall be levied and collected as other county taxes are levied and collected.''

At the appropriate time in 1930, defendant, complying fully with the law, as it had done each year to meet installments of its bonds serially accruing, levied a tax

for the discharge of the bonds, with interest, due October 1, 1931, in virtue whereof, and prior to such due date, the county treasurer had collected and credited to the fund designated by the act, a sum sufficient to pay all bonds and unpaid interest thereon, due as stated, including plaintiff's bonds and interest. October 18, 1931, plaintiff demanded payment of the county treasurer, but payment was refused. October 4, 1934, plaintiff presented its bonds and interest coupons to defendant as a claim against the county, but its demand for audit and allowance was denied. October 22, 1934, this action was instituted, culminating in a judgment of dismissal.

1. In adjudging that the holder of the bonds was not entitled to judgment against the county, Did not the learned trial court rightly resolve? Our pronouncements are that an action for money judgment on formal county obligations—warrants or bonds—will not lie. Not only so, but we have stated that to enforce payment of such obligations resort must be had to mandamus. As is well understood, two county activities or agencies, acting independently, have to do with discharging obligations of the nature here. One such agency is the board of county commissioners, whose duty it is to make timely and sufficient tax levies, that funds in required amounts may be available in the county treasury. The other agency is the county treasurer, whose duty it is to collect, properly credit and legally disburse, moneys derived from tax levies. If the board shall fail to make the necessary levy in a given instance, it may be required to do so by mandamus; and if the county treasurer, having collected the required sum with which to discharge the particular obligation which prompted the levy, refuses to make payment, he likewise is amenable to writ of mandate. The duties of these two agencies of county government do not overlap, they are not joint, and neither acts or is responsible for the other. Hence, as said by Mr. Chief Justice Campbell in *Board of Com'rs v. Sims*, 31 Colo. 483, 74 Pac. 457, "An action to recover

a money judgment against the county upon such bonds and coupons will not lie; but that mandamus, either against the board or the treasurer, as the case may be, is the only remedy.'' In *Forbes v. Board of Com'rs,* 23 Colo. 344, 47 Pac. 388, money judgment was sought on unpaid county warrants. There Mr. Justice Goddard, speaking for the court said, ''The policy of the legislature, as evidenced by the various enactments prescribing the manner in which the finances of a county shall be administered, is manifestly against the maintenance of such a suit.'' The court announced the rule emphasized in the Sims case, supra, that mandamus must be employed, against the board of county commissioners to require levy, or against the county treasurer, where through levy the necessary sum has been raised, ''to compel its payment.'' Reviewing the Sims case, Mr. Justice Bailey, who delivered the opinion in *Berkey v. Board of Com'rs,* 48 Colo. 104, 109, 110 Pac. 197, said: ''Mandamus * * * is the sole remedy.'' ''And,'' he added, ''it is idle to discuss or consider that question further.'' The Court of Appeals in *Board of Com'rs v. People,* 16 Colo. App. 215, 64 Pac. 675, by Judge Thomson, discoursed upon the law at length holding that resort to mandamus is imperative, against the board where levy has not been made, and against the treasurer where the board has performed, as here. That case has been cited with approval in many of our decisions. Other cases, in which there is an adherence to the rule that only to mandamus may there be resort in situations of this character, although the list is not exhaustive, are, *Denver v. Bottom,* 44 Colo. 308, 98 Pac. 13; *Rio Grande Co. v. Orchard District,* 64 Colo. 334, 171 Pac. 367; *Henrylyn Irr. Dist. v. Thomas,* 64 Colo. 413, 173 Pac. 541.

2. Not only will an action for money judgment against the county not lie, as I think I have shown, but if such judgment be given it is puerile and nonenforceable. Execution thereon is inhibited. '35 C. S. A., vol. 2, c. 45, §7. If the county pays the judgment by warrant,

which the same statute says may be done, and does not discharge the warrant, the authorities already reviewed hold that an action for money judgment on the defaulted warrant will not lie. "The act makes no distinction between judgments, and if its provisions are applicable to a judgment upon a county warrant, then such a judgment is upon precisely the same footing with any other judgment against a county; the commissioners have a right, by the explicit terms of the law, to pay the judgment by a warrant; and to change the law, or deny the right which it gives, is not within the power of the courts. Now the second warrant may also be reduced to judgment, this judgment paid by another warrant, and the same process repeated forever, so that the time would never come when the county's creditor would receive his money. We have no right to impute a want of sense to the legislature, or to suppose that a situation so absurd was within its contemplation." *Board of Com'rs v. People, supra.* The creditor "ought not to sue upon such warrants and obtain judgment; because, if he did so, he would not be entitled to an execution against the county, but only to other warrants to the amount of the judgment. This would be an idle procedure which the courts will not tolerate." *Denver v. Bottom, supra.* When mandamus is sought to enforce collection of a judgment against a county, predicated as here, the court will look behind the judgment to ascertain from the nature of the original claim what method may be adopted for its enforcement. Otherwise expressed, the merger of the obligations which form the basis of the claim here into a judgment against the county, changes their form, but not their identity. *Board of Com'rs v. People, supra.* Hence, the puerility of the judgment which the court has ordered. It cannot be enforced by writ of execution, and in itself the judgment affords the bondholder no additional rights or remedies. The statute which authorized issuance of the obligations held by the creditor, provided what the board should do toward

their discharge, and if as the result of its observance of its duty the county treasurer became possessed of the requisite funds, the statute laid certain duties upon that official. In finality, therefore, judgment or no judgment, the creditor's rights are dependent upon the statute which he pleads as the authority for the issuance of his bonds. If under the statute the board has failed in its duty, upon proper application the mandate of the court will issue requiring performance; likewise, as against the county treasurer should that agency of the county fail to comply with the statute. Placing the bonds in judgment—not allowable in any event, as I think—does not alter the situation of the parties in the slightest.

3. By the creditor's complaint it appears that the board of county commissioners, against which the money judgment is sought, observed its duty timely, adequately and effectively. It made the required levy from year to year, the taxpayers of Pitkin county paid the tax thus visited upon them, and the county treasurer became possessed of, and credited to the proper account, the very sum which the creditor claims. Because on demand the county treasurer—not the board of county commissioners—failed to pay the bonds for the discharge of which he had collected the funds, the creditor, not availing itself of the right to require payment at the hands of the county treasurer, which the law plainly affords, slept on its rights for three years, and then sued the agency of the county which did perform, and ignored the defaulting agency. The creditor should be remitted now to its plain and proper remedy, to which I think it eventually will find itself resorting.

Upon consideration of the foregoing, Mr. Justice Bouck was moved to further exposition of his views. I think my distinguished brother has but emphasized the error of his original opinion. The ''line of cases'' cited in my opinion does not, I respectfully affirm, nor does any Colorado case, ''approve a money action demand'' on county bonds or warrants. It is true that in two or

three of the cases the writer of the opinion, "merely to be on the side of safety," as explained by the Court of Appeals, "hypothetically conceded the possibility of such a judgment." *Board of Com'rs v. People,* 16 Colo. App. 215, 230, 64 Pac. 675. In the same case, at page 236, Judge Wilson, specially concurring, says no exception exists, and that no "such a supposition" is warranted by the reasoning of the court, nor by that of the authorities cited." It is idle, indeed, as I think, the status of the party defendant here considered, even to mention the term "diversion." The bondholder did not allege, nor attempt to show, that the board diverted the fund, and the enactment of 1915, pleaded and relied upon by the bondholder, precludes such possibility. The specific provision is, that when the money is collected the treasurer shall keep it "as a special fund, to be used only in payment of the interest upon and for the redemption of such bonds." The bondholder pleaded that at the date of maturity of its claim, the county treasurer "was possessed of the requisite and designated funds with which to "make payment thereof; alleging also that the county treasurer sent the money to Kountze Brothers in New York, and that the institution failed before the bonds were presented there for payment. But what has that to do with an action for money against the board of county commissioners? Nothing whatever, I submit. On the contrary, it negatives diversion by the board.

That the bondholder is entitled to proceed against the county treasurer by mandamus, admits of no doubt, and that that remedy must be pursued in the circumstances here is the holding of all our decisions. Until that shall be done—until in a proper action the county treasurer is called upon to answer for the money which the bondholder itself says the board provided by levy (its only duty under the law), and that the county treasurer collected and credited as required by the special act, What right have we to adjudge he has no sufficient defense?

Or, recognizing that he has no defense, will not respond to the writ by making payment? If speculation is to be indulged, the authorities say that when the custodian of public funds refuses to pay obligations properly to be discharged therefrom, mandamus will lie to require payment, and that the loss of the funds by bank failure or otherwise, will not constitute absolving answer. See *State ex rel. v. McNamer,* 62 Mont. 400, 205 Pac. 951, and cases cited and reviewed by the Montana court. "And the fact that the" county treasurer "in such case is liable to an action upon his official bond constitutes no bar to relief by mandamus." High Ex. Leg. Rem. (3d ed.) §367.

Mr. Justice Bouck now concedes that since the board, "having once levied * * * a tax sufficient to pay the securities involved herein, * * * had exhausted its power and could not be mandamused to collect another tax." Of what avail, then, is the judgment? The debt, not the judgment, as the authorities agree, constitutes the sole predicate for tax levy.

But it is urged that, since not until on petition for rehearing did the board raise the point that it was not amenable to a money demand action, we are not at liberty to give it consideration. The suggestion came in time to save us from the embarrassment of ordering a futile judgment. Besides, the board of county commissioners * * *, the suable name of the county (2 '35 C. S. A., chapter 45, section 5), being a public corporation—a part of the government, is without power to waive the well recognized public policy which precludes the entry of a money judgment against a county on its bonds. Relative to the case of *Hockaday v. Board of Com'rs,* 1 Colo. App. 362, 29 Pac. 287, cited by Mr. Justice Bouck, we have said it holds that on an obligation of a county payable exclusively out of a special fund (which is the situation here), "an action cannot be maintained * * * to recover a general money judgment against the county." See *Forbes v. Board of Com'rs, supra,* p. 351.

194

Finally, it is said that the question of enforcing the judgment is not before the court. Perhaps not; but the answer is not so simple. We have said that to enter a judgment premised as here, "would be an idle procedure which the courts will not tolerate." *Denver v. Bottom, supra.*

MR. CHIEF JUSTICE BURKE concurs in this opinion.