Robert C. CRISWELL and Janet M. Criswell, Plaintiffs-Appellants,

v.

M.J. BROCK AND SONS, INC., a Delaware corporation, Defendant-Appellee, and Third-Party Plaintiff,

v.

HOMEOWNERS WARRANTY CORPORATION OF COLORADO, a Colorado corporation, and INA Underwriters Insurance Company, a California corporation, Third-Party Defendants.

No. 83SA140.

Supreme Court of Colorado,
En Banc.

April 23, 1984.

James S. Kimmel, Littleton, for plaintiffs-appellants.

Clanahan, Tanner, Downing & Knowlton, Michael J. Wozniak, Denver, for defendant-appellee, and third-party plaintiff.

KIRSHBAUM, Justice.

Plaintiffs, Robert and Janet Criswell, appeal a Jefferson County District Court order declaring that section 13–80–127(1)(a), C.R.S.1973 (1983 Cum.Supp.), does not violate constitutional guarantees of equal protection of the law and dismissing plaintiffs' claims for damages to their residence on the basis of that statute of limitations. We affirm in part, reverse in part, and remand the case for further proceedings.

I.

The record reveals the following pertinent facts. On September 10, 1976, plaintiffs purchased a single family residence from defendant, M.J. Brock and Sons, Inc. (Brock), the builder of the home, for $65,626.67. Plaintiffs received a ten-year warranty from third party defendant, the Homeowners Warranty Corporation of Colorado (HOW),[1] in connection with this transaction. The warranty provided that plaintiffs were "eligible for insurance coverage of major structural defects if (a) it occurs in the third through tenth years of coverage, or (b) if it occurs in the first two years and your builder is unable or unwilling to repair it."[2]

On July 15, 1981, plaintiffs filed a complaint against Brock alleging that the home sustained severe structural damage subsequent to their purchase of it. These damages allegedly included

"heaving and cracking of the basement floor, severe cracking at the foundation walls, severe cracking of the walls of the upper levels of the residence, severe cracking of ceilings, damage to window structures, separation of the exterior brick from the exterior walls, separation of the fireplace structure from the remainder of the residence, damage to water lines, waste lines and gas lines."

The complaint also asserted that plaintiffs had discovered the source of the damages on or about November 14, 1979, as the result of an inspection of the property which had been required by HOW. Claiming that Brock breached an implied warranty of habitability, breached its duty to construct the residence in a workmanlike manner, and intentionally failed to disclose the soil conditions of the property, plaintiffs sought actual and punitive damages.

Brock subsequently took the deposition of Janet Criswell. She testified that by late 1978 cracks had appeared in the basement floor, allowing water to seep through; that when plaintiffs contacted Brock about these problems, they were informed that Brock thought it no longer had any obligations under the HOW warranty; that the structural problems became "unbearable" by March 1979; and that HOW was informed of the extent of the structural damage. She also testified that an engineer sent by HOW to examine the residence filed a report concluding that the damage had been caused in part by defects in the landscaping plans, that HOW began warranty work on the residence sometime in 1980, and that plaintiffs subsequently sold their home for $70,000.[3]

---

**1.** INA Underwriters Insurance Co. is the insurer under the warranty and was joined as a third party defendant.

**2.** A copy of the warranty is not in the record on appeal. The quoted statement of coverage is taken from a "homeowner's reporting form"

which was submitted with plaintiffs' brief in opposition to summary judgment.

**3.** On July 8, 1982, the parties filed a stipulation which stated "that the testimony of Plaintiff Robert C. Criswell, if Mr. Criswell were to be deposed, would be substantially the same as the

Brock's motion for summary judgment alleged, *inter alia*, that plaintiffs' claims were barred by the two-year statute of limitations contained in section 13–80–127, C.R.S.1973 (1983 Cum.Supp.). Relying upon Janet Criswell's deposition, Brock argued that plaintiffs' claims "arose on or before March, 1979, when they were aware of the defects in the home." Plaintiffs acknowledged that by March of 1979, they had observed numerous structural problems in their home. They argued, however, that they did not discover the reason for the damage until October 12, 1979, the date of the report prepared by the engineering firm retained by HOW,[4] and that, therefore, the statute did not bar their claims. Alternatively, plaintiffs contended that either the date of sale of the house— March 1981—or the date of HOW's repairs—sometime in the fall of 1980—was the proper date to be applied in determining when their claims for relief arose. Plaintiffs also challenged the constitutionality of section 13–80–127 on equal protections grounds. The trial court granted Brock's motion for summary judgment and plaintiffs have appealed.[5]

## II.

Section 13–80–127(1)(a), C.R.S.1973 (1983 Cum.Supp.), states, in pertinent part, as follows:

"All actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section."

In *McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334, 1346 (D.Colo.1980), a judge of the United States District Court for the District of Colorado concluded that the then extant version of section 13–80–127 [6] violated the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article V, Section 25, of the Colorado Constitution [7] "because it creates a classification which bears no reasonable relation to the objective sought to be achieved." Another judge of the same court reached a contrary conclusion in *Cudahy Co. v. Ragnar Benson, Inc.*, 514 F.Supp. 1212 (D.Colo.1981).

In *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo.1982), this court held, *inter*

---

testimony given by Plaintiff Janet M. Criswell at her deposition held Wednesday, March 3, 1982."

**4.** The report stated in part that the damage to the residence's foundation floor was "the result of the clay soils under the slab absorbing excess moisture and expanding, or increasing in volume...."

**5.** This appeal was transferred from the Court of Appeals because of plaintiffs' constitutional challenge to § 13–80–127, C.R.S.1973 (1983 Cum.Supp.). *See* §§ 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973.

**6.** Section 13–80–127 was amended by the General Assembly on June 7, 1979. *See* 1979 Colo. Sess.Laws, ch. 144, § 1 at 631. The amendment became effective July 1, 1979, and applies to all actions commenced on or after said date. 1979 Colo.Sess.Laws, ch. 144, § 2 at 632. Prior to this amendment, § 13–80–127(1), C.R.S.1973, read as follows:
"All actions against any architect, contractor, engineer, or inspector brought to recover damages for injury to person or property caused by the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section."

**7.** Article V, § 25, of the Colorado Constitution states in pertinent part as follows:
"The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say ... granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. In all other cases, where a general law can be made applicable no special law shall be enacted."

*alia,* that the immediate predecessor of the present version of section 13–80–127 did not violate federal and state constitutional guarantees of equal protection of the law. Noting that the four classes of persons granted the protection of the two-year statute of limitations "do not have continuing control over or involvement with the maintenance of the improvement after its initial construction," *Yarbro,* 655 P.2d at 827, we concluded that such classification was reasonable and has a rational relationship to a permissible state objective.[8]

■ Section 13–80–127(1)(a), as presently enacted, is substantially similar to the statute considered by this court in *Yarbro.* The major distinction is the addition in the present statute of "builder or builder vendor" to the list of classes enjoying the protection of the two-year statute. The considerations articulated in *Yarbro* which support the conclusions that architects, contractors, engineers and inspectors constitute a reasonable classification and that such classification is reasonably related to a legitimate state interest apply with equal force to the question of whether builder-vendors may be accorded the benefit of a two-year limitation period. We, therefore, conclude that the legislative decision reflected in the present version of section 13–80–127 requiring claims against builder-vendors to be filed within two years after the claim for relief arises does not violate federal or state constitutional equal protection guarantees.

### III.

Section 13–80–127(1)(a) requires claims to be filed "within two years after the claim for relief arises." Brock's motion for summary judgment contends that it is undis-puted that plaintiffs' claim for relief in this case "arose" prior to July 15, 1979, because plaintiffs were aware of the severe physical damages to their home no later than March 1979. We do not agree that this fact-law question is undisputed.

The General Assembly has defined when a claim for relief arises for purposes of section 13–80–127(1)(a)'s two-year limitations provision in section 13–80–127(1)(b), as follows:

"A claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature."[9]

Thus, any inquiry concerning the date upon which the two-year limitations period begins to run must focus on the discovery by the injured party of the defect which caused the claimed injuries.

■ In the present version of section 13–80–127, the General Assembly has distinguished discovery of the defect which "causes" the injury from the injury itself. Thus, decisions of the Colorado Court of Appeals construing prior versions of the statute of limitations for architects and engineers which find significance in the date the injuries or damages are or should have been discovered are not directly applicable to the present legislative language. *See Greene v. Green Acres Construction Co.,* 36 Colo.App. 439, 543 P.2d 108 (1975); *Housing Authority v. Leo A. Daly Co.,* 35 Colo.App. 244, 533 P.2d 937 (1975).

The present statute recognizes that in construction projects discovery of the physical manifestations of a defect is not necessarily concurrent in time with discovery of

---

8. In *Yarbro,* we noted as follows:

"Appellants have cited the decision in *McClanahan v. American Gilsonite Co.,* 494 F.Supp. 1334 (D.Colo.1980), as persuasive authority that section 13–80–127, C.R.S.1973 is unconstitutional. However, we do not agree with that ruling, which held the section unconstitutional on equal protection and special legislation grounds, for the reasons set forth herein." 655 P.2d at 828 n. 8.

9. A similar discovery concept adopted by the General Assembly in § 13–80–105(1), C.R.S.1973 (1983 Cum.Supp.), the statute of limitations applicable to medical malpractice actions, states as follows: "No person shall be permitted to maintain [a medical malpractice] action ... unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury."

the defect itself. A similar question regarding the distinction between a design defect and the physical manifestations of the defect was considered by the Appellate Court of Illinois in *Society of Mount Carmel v. Fox*, 90 Ill.App.3d 537, 413 N.E.2d 480, 46 Ill.Dec. 40 (1980). In that case, the defendant argued that the applicable Illinois statute of limitations began to run when the plaintiff saw cracks and other defects in the building, rather than when it learned what caused such defects from a contractor's report. The court held that the statute of limitations began to run at the time the report was received, since no evidence was presented that the building owners knew or should have known of the defective design prior to that date.

 We find the reasoning of *Society of Mount Carmel v. Fox* persuasive here. Plaintiffs' complaint in effect alleges that the construction defects included improper landscaping design to counteract soil conditions which were unsuitable for normal construction. The complaint also alleges that the defect of unsuitable soil conditions caused the damages sustained by plaintiffs, and that this defect was not discovered until November of 1979. Thus, the trial court's conclusion that no genuine issue of material fact existed as to whether plaintiffs knew about the defect prior to July 15, 1979, is not supported by the record. To the contrary, the issue of whether, prior to that date, plaintiffs discovered or in the exercise of reasonable diligence should have discovered the defects which caused the alleged damage to their residence involves disputed matters of material fact which cannot be resolved as a matter of law. *See Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970).

We conclude that the entry of summary judgment was not warranted here. Thus, we do not address plaintiffs' alternative contentions that the six-year statute of limitations contained in section 13–80–110, C.R.S.1973, applies to their claims and that defendant is equitably estopped from as-

serting the defense of the statute of limitations contained in section 13–80–127.[10]

The judgment of the trial court is affirmed with respect to its conclusion that section 13–80–127 does not violate equal protection guarantees of the constitutions of the United States and Colorado. The order of summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

10. Neither of these arguments was presented to the trial court.