WOOD BROS. HOMES, INC., Petitioner,

v.

Dennis L. HOWARD and Deborah R. Howard, Respondents.

No. 92SC226.

Supreme Court of Colorado, En Banc.

Nov. 15, 1993.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Karen Roan Novotny, Golden, for petitioner.

Frank & Finger, P.C., Robert D. Mendenhall, Evergreen, for respondents.

Justice SCOTT delivered the Opinion of the Court.

In this case we are called upon to decide whether homeowners alleging the negligent construction and design of their home by a builder/vendor can be barred from recovery under the applicable statute of limitations. Petitioner Wood Bros. Homes, Inc., a builder/vendor of residential homes, appeals the decision of our court of appeals affirming a judgment entered on a jury verdict for the homeowners, Dennis L. and Deborah R. Howard, arguing that section 13–80–104(1)(a–b), 6A C.R.S. (1987), and not the predecessor limitation statute, applies to the claims asserted against it. Wood Bros. Homes, Inc. also challenges the court of appeals decision that the cause be remanded to the trial court for the imposition of attorney fees. We granted certiorari on these issues and now affirm the court of appeals decision upholding the jury verdict for the homeowners, but reverse the court of appeals decision awarding attorney fees and court costs.

## I.

### A.

Wood Bros. Homes, Inc. ("Wood Bros."), a builder/vendor of single family homes, completed construction on one of its residential homes in May 1978, and soon thereafter sold the home. In December 1979, the original purchasers sold the home to Stephen and Donna Blake. On or around January 5, 1984, the Blakes noted some deterioration in the home and on March 30, 1984, they filed a "structural defects claim" with their insurance company under their homeowners warranty policy. On the claim form, the Blakes characterized the deterioration as follows:

> South wall in family room is cracking. Fireplace on same wall is cracking. Bricks are separating from the mortar. Bricks can actually be removed from the hearth. Stairway leading to upper level is sinking/moving down. Family room floor is sinking (so far approximately 2"). Basement floor on south end is constantly wet.

In response to this claim, the Blakes' insurance company conducted an investigation of the purported defects, but denied coverage on the basis that the problems were not structural in nature, but were merely "cosmetic."

Soon afterward, in August, 1984, respondents Dennis L. and Deborah R. Howard ("the Howards") purchased the home from the Blakes. During the sales negotiations the Blakes informed the Howards about the structural defects warranty, the claim they filed with their homeowners insurance carrier, and the fact that their insurance carrier had denied the claim on the grounds that the deterioration consisted of cosmetic or superficial problems.

In July 1985, less than a year after having purchased the home, the Howards noticed "some drywall cracking that was more than just hairline cracking," as well as an increase in the "sinking of the family room floor slab." These problems reportedly continued to advance, and in an effort to identify their source, the Howards retained an engineering firm to conduct an analysis of the structural integrity of the home, and also submitted a major structural defects claim to their homeowners insurance company. That claim was denied, and consequently, the Howards initiated this action in the district court.

### B.

The Howards filed their complaint on June 16, 1986, naming their sellers, the Blakes, and the builders, "M.D.C., Inc., f/k/a Wood Bros. Homes" as defendants and alleging among other claims, negligent design and construction of their home.

Shortly after the complaint was filed, the defendant builder/vendor filed a motion to dismiss the complaint asserting that "M.D.C. Holdings, Inc., upon whom service was alleged is a separate and distinct corporation from Wood Bros. Homes, Inc.," and "[t]hat Wood Bros. Homes is not a corporate body and should be correctly designated as Wood Bros. Homes, Inc."[1] On July 29, 1986, the Howards filed a combined response and motion to amend the complaint to substitute Wood Bros. as the builder/vendor defendant. On July 31, 1986, the district court ordered the filing of the Howards' amended complaint substituting petitioner Wood Bros. Homes, Inc., as a new party defendant and dismissed the complaint against M.D.C. Holdings.[2]

On June 8, 1988, holding the action was time-barred by section 13–80–104(1)(a–b), the district court granted summary judgment in favor of Wood Bros.[3] The district court held, as a matter of law, that because "[t]he proper statute of limitations is contained in C.R.S. 13–80–104(1)(a) and (b), as amended in 1986," which "shall apply to claims for relief arising after [July 1, 1986,]" and because "[t]he claim for relief against Wood Bros. ... first arose on

March 30, 1984," the Howards "commenced their action on July 31, 1986, by an Amended Complaint." Accordingly, that court held that the Howards were barred by the statute of limitations from proceeding against Wood Bros. by virtue of the two-year limitation on claims against builder/vendors set forth in section 13–80–104(1)(a–b), 6A C.R.S. (1987).

The Howards appealed and in *Howard v. Wood Bros. Homes, Inc.*, Nos. 88CA1084 and 88CA1328, slip op. (Colo.App. Sept. 28, 1989) (not selected for official publication) ("*Howard I*"),[4] the court of appeals reversed the district court's summary judgment because, as that court noted, the statute of limitations invoked by the district court, i.e., section 13–80–104(1)(a–b) "governs only those claims for relief arising *on or after July 1, 1986*," and here, "the Howards filed [their] action to recover for [the] alleged structural defects ... *on June 16, 1986*." Slip op. at 1 (emphasis added). Hence the court of appeals concluded that section 13–80–104(1)(a–b) was inapposite to the Howards' claim because they had filed their action on June 16, 1986, a date prior to the July 1, 1986, effective date of that section.[5]

---

1. Attached to the motion were two certificates of good standing issued by the Colorado Secretary of State in the names of "WOOD BROS. HOMES, INC. (DELAWARE CORPORATION)" and "M.D.C. HOLDINGS, INC. (DELAWARE CORPORATION)," both dated July 1, 1986.

2. On September 24, 1987, Wood Bros. changed its corporate name from Wood Bros. Homes, Inc., to M.D.C. Wood, Inc. For the "sake of simplicity," the parties agreed to continue to refer to the defendant as "Wood Bros. Homes, Inc." throughout the proceedings. For similar purposes, we do the same.

3. The district court had previously dismissed the complaint against the Blakes pursuant to stipulation.

4. The district court's summary judgment was appealed as case number 88CA1084 and the trial court's award of costs to Wood Bros. was appealed as case number 88CA1328; the two appeals were consolidated on September 22, 1988.

5. In its determination that the Howards' claim predated the effective date of § 13–80–104(1)(a–b), the court of appeals applied the date that the

Howards filed their original complaint in the district court against the Blakes and M.D.C. Holdings, Inc., f/k/a Wood Bros. Homes, Inc., i.e., June 16, 1986, rather than the date that the Howards filed their motion to amend their complaint, i.e., July 29, 1986, or the date that, pursuant to order of the trial court, the amended complaint was filed substituting Wood Bros. as a co-defendant in the action, i.e., July 31, 1986. The court of appeals determination that the Howards' action against Wood Bros. was "commenced" on June 16 rather than after July 1 (either July 29 or July 31) was not appealed by Wood Bros., nor has it been raised by the issues upon which we granted certiorari. Thus, as did the parties before us, we accept the judgment of the court of appeals without addressing whether the court properly arrived at the June 16, 1986, date based upon the "relation back doctrine." *See* C.R.C.P. 15(a) (an amendment changing the party against whom a claim is asserted relates back to the date of the original pleading if the party to be brought in by the amendment has received notice of the action such that he will not be prejudiced in maintaining his defense on the merits, and the party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him). *See also Halli-*

Continuing, the court of appeals observed that the trial court should have invoked Ch. 144, sec. 1–2, § 13–80–127(1)(a–b) Colo.Sess.Laws 631–32 (approved June 7, 1979) (hereafter section 13–80–127(1)(a–b)), the predecessor statute to section 13–80–104(1)(a–b), 6A C.R.S. (1987). Noting that under section 13–80–127(1)(a), a claim for relief arises "at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury," the court of appeals applied the principle established by *Criswell v. M.J. Brock & Sons, Inc.*, 681 P.2d 495 (Colo.1984), i.e., that in the case of "construction projects, discovery of the physical manifestation of a defect [in the improvement] is not necessarily equivalent to discovery of the defect itself," slip op. at 2. The court of appeals thus concluded that because it was unclear as to when the Howards, as the damaged parties, actually discovered, or should have discovered "the defect itself," as that term is contemplated under *Criswell*, a genuine issue of material fact "remained for resolution as to when the Howards knew or should have known of the alleged defect, as distinguished from some physical manifestation thereof," slip op. at 2–3, for the specific purpose of determining whether the Howards' claim fell within the statutory time limitation. Accordingly, that court remanded the cause to the district court for resolution of the time preclusion issue under section 13–80–127(1)(a–b).

On remand, the district court ruled that the action against Wood Bros. was commenced by the Howards on July 29, 1986,[6]

that the Howards first became aware of the physical manifestations of the structural defect in the home in August, 1984, and finally, that because the evidence, when viewed in a light most favorable to Wood Bros. did not support a conclusion that the Howards' predecessors in interest, the Blakes, had knowledge of the underlying structural defect before the Howards first learned of the defect, the Howards' action was not time-barred by section 13–80–127(1)(a). The trial resulted in a jury verdict in favor of the Howards, and the trial court subsequently entered judgment against Wood Bros. in the amount of $42,500, plus statutory interest of $19,882.93 and costs of $9,299.50.

Wood Bros. appealed the trial court's verdict to the court of appeals, and the Howards cross-appealed. *Howard v. Wood Bros. Homes, Inc.*, 835 P.2d 556 (Colo.App. 1992) ("*Howard II* ").[7] Wood Bros. argued, *inter alia*, that the trial court erred in ruling that the statute of limitations did not begin to run when the Howards' immediate predecessors in title, the Blakes, discovered the defects in the home, regardless of which statute of limitations, section 13–80–127(1)(a–b) or section 13–80–104(1)(a–b), is applied. Specifically, Wood Bros. asserted that the date the Blakes first discovered the defects, as set forth in their structural defects claim, i.e., January 5, 1984, was the date that the statute of limitations necessarily began to run, on the theory that the Blakes' knowledge should be imputed to the Howards. Additionally, Wood Bros. asserted that the date the statute began to

---

*burton v. Public Service Co. of Colorado*, 804 P.2d 213 (Colo.App.1990), *cert. denied*, No. 90SC497 (Jan. 28, 1991).

**6.** In *Howard I*, reversing the summary judgment order entered in favor of Wood Bros. and remanding for further proceedings, the court of appeals held the Howards' action was filed on June 16, 1986. Because it does not alter the result in the resolution of the matters before us, we will not dwell on the failure of the trial court (and later the court of appeals in *Howard II* ) to adhere to the June 16, 1986, date as the date the action was commenced against Wood Bros., as determined in *Howard I*. However, as more fully discussed below, it was the reincarnation

of July 29, 1986, as the date the action was commenced which contributed to some confusion regarding the applicable statute of limitations in *Howard II*. The district court apparently used the date that the Howards filed their motion to amend their complaint in order to add Wood Bros. as a co-defendant in the action, i.e., July 29, 1986. As indicated *supra* at p. —— and emphasized in n. 5 at p. 927, however, in *Howard I* the court of appeals determined that June 16, 1986, was the date that the cause of action was commenced for determining which statute applied.

**7.** A separate panel of the court of appeals decided *Howard II*.

run was a question for jury resolution and not a question of law.

The court of appeals rejected Wood Bros.' argument on the grounds that the controlling statute of limitations in this case is section 13–80–127(1)(a–b); [8] the court also stated that because Wood Bros. "submitted no new evidence" nor "any evidence which would present a factual issue for determination by the jury," there was no evidence that the Howards could have discovered the physical manifestations of the defect prior to August, 1984, when they first viewed the home. Next, that court pointed out that, even assuming the Howards knew or should have known that, at the time of their initial viewing of the home in August, 1984, the defects were structural in nature and not merely cosmetic or superficial, they nevertheless commenced their action against Wood Bros. within two years of that date, i.e., on July 29, 1986. *Howard II*, 835 P.2d at 558. As such, the court held that as a matter of law, the action brought by the Howards could not be time-barred under section 13–80–127(1)(a–b).

In their cross-appeal, the Howards argued, as pertains here, that they should be awarded attorney fees and costs for Wood Bros.' frivolous appeal of the statute of limitations issue. The court of appeals agreed with the Howards, stating that Wood Bros.

had two prior opportunities to have the statute of limitations argument addressed. Its argument was fully briefed both at the trial level and on the first appeal. And, this court's ruling [in *Howard I*] on the issue clearly constituted the law of the case.[9] While we grant wide latitude to counsel in pursuing legal theories, we cannot countenance attempts to relitigate claims that previously have been conclusively determined on appeal in the same case. Such active litigation of settled issues is presumed to be frivolous. *See* § 13–17–102(4); *Cf. SaBell's, Inc. v. City of Golden*, [832 P.2d 974 (Colo.App.1991)].

*Howard II*, 835 P.2d at 561 (footnote 9 added).

Wood Bros. then petitioned this court for review and we granted certiorari to resolve the following three issues:

1. "Whether section 13–80–127, 6 C.R.S. (1973) or section 13–80–104, 6A C.R.S.

**8.** In its analysis of Wood Bros.' argument that the predecessors' in interest knowledge should be imputed to the Howards, the court of appeals apparently assumed that, as an initial matter, it had to resolve which statute of limitations applied in this case. In doing so, that court referred to *Howard I*, wherein the court held that § 13–80–127 was the applicable statute of limitations; the *Howard II* court also observed that

[a]n appellate court's determination [ ] and issuance of a mandate upon an issue presented to it becomes the law of the case and must be followed in subsequent proceedings before the trial court. [Our] decision on an issue of law made at one stage of the case[, *Howard I*,] becomes binding precedent to be followed in successive stages of the same litigation.

Our holding in the first appeal that the controlling statute of limitations was the predecessor statute [§ 13–80–127,] addressed the same arguments sought to be raised here. It thus became, and continues to be, the law of the case.

*Howard II*, 835 P.2d at 558 (citations omitted). Thus in *Howard II*, the court of appeals concluded that the applicable statute of limitations in this case is § 13–80–127(1)(a–b). However, it is noteworthy that the grounds for the *Howard I*

court's decision were as follows: first, that the Howards "filed this action" to recover damages against Wood Bros. "[o]n June 16, 1986," and, second, that § 13–80–104, the successor statute, "only governs those claims for relief arising on or after July 1, 1986," making § 13–80–104 "inapplicable here." *Howard I*, slip op. at 1. *See* discussion, *supra*, at pp. 927–28. Inexplicably, the panel of the court of appeals in *Howard II* adopted the date established by the trial court on remand (July 29, 1986), as the date that the Howards' action was commenced, rather than the date determined in *Howard I* (June 16, 1986), thereby invalidating the very basis for the *Howard I* court's determination as to which limitations statute should apply, i.e., that the action was filed before July 1, 1986, the date § 13–80–104 became effective. As such, the *Howard II* court's invocation of the "law of the case" doctrine is wanting in solid logical support. We therefore reject the court of appeals application of the full force of that doctrine when considering whether the appeal by Wood Bros. was "frivolous" or an attempt to "relitigate claims" for imposition of attorney fees, as discussed more fully in part III. B. of this opinion.

**9.** *See* n. 8 at p. 929 for a discussion of the court of appeals "law of the case" rationale.

(1987), applies to the statute of limitations issue in this case."

2. "Whether a prior owner's knowledge is considered in determining whether a subsequent buyer's claim against a builder for negligence is barred by the statute of limitations in section 13–80–127."

3. "Whether the court of appeals erred in concluding that [Wood Bros.'] appeal of the statute of limitations issue was frivolous and in awarding the [Howards] attorney fees and costs for having to oppose this argument on appeal."

We affirm that part of the court of appeals decision which found that section 13–80–127(1)(a–b) is the applicable statute of limitations in this case, and accordingly, we hold that under the plain language of that section, the action brought by the Howards against Wood Bros. for the negligent construction and design of their home is not time-barred. Moreover, based on the record before us we need not and do not reach Wood Bros.' argument that the knowledge of the Howards' immediate predecessors in title, i.e., the Blakes, must be considered to determine whether the Howards' action, brought as the "damaged part[ies]," was time-barred. Finally, we disapprove of that portion of the court of appeals opinion finding Wood Bros.' appeal to be frivolous, and therefore reverse that portion of the court of appeals decision which held that the Howards are entitled to attorney fees and costs connected with the appeal.

## II.

### A.

█ In order to determine whether a homeowner is time-barred from bringing a negligence action against a builder/vendor, we look to the relevant limitations statutes and our case law interpreting those statutory provisions. For claims that arose after July 1, 1979, but prior to July 1, 1986,[10] the time limitations for bringing an action are contained in Ch. 144, sec. 1, § 13–80–127(1)(a–b) (approved June 7, 1979), which provides as follows:

Section 1. 13–80–127(1), (2), and (4), Colorado Revised Statutes 1973, are amended to read:

**13–80–127. Limitation of actions against architects, contractors, builders and builder vendors, engineers, inspectors, and others.** (1)(a) All actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section. (b) A claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature.

Although this section was in force at the time the Howards initially commenced their action, i.e., on June 16, 1986, a modified successor limitations statute, section 13–80–104, became effective on July 1, 1986.

█ As a general rule, statutes of limitations are not applied retroactively unless there is language in the extant statute specifically providing for such retroactive application. *Jones v. O'Connell*, 87 Colo. 103, 285 P. 762 (1930). Thus, because section 13–80–127 was in effect at the time the Howards' action was commenced, i.e., on June 16, 1986, a presumption arises that section 13–80–127(1)(a–b) is the controlling limitations statute in this matter, unless the successor statute, section 13–80–104, expressly provides otherwise. Accordingly, we review the language of section 13–

---

**10.** Ch. 144, sec. 2, § 13–80–127 (approved June 7, 1979) establishes the effective date of amended § 13–80–127 as July 1, 1979, such that all actions commenced on or after that time were subject to its terms. As noted *infra* at pp. 930–31, this section was repealed and reenacted as § 13–80–104, 6A C.R.S. (1987), which was made effective on July 1, 1986.

80–104(1)(a–b), the successor statute to section 13–80–127(1)(a–b).

### B.

In 1986, section 13–80–127(1)(a–b) was substantially modified and reenacted by the General Assembly as section 13–80–104(1)(a–b), 6A C.R.S. (1987), pursuant to Colorado Senate Bill 69 and House Bill 1352. *See* Ch. 114, sec. 1 § 13–80–104(1)(a–b) (approved May 23, 1986) and Ch. 116, sec. 23(1–2) (approved May 23, 1986). That section provides as follows:

**13–80–104. Limitation of actions against architects, contractors, builders or builder vendors, engineers, inspectors, and others.** (1)(a) Notwithstanding any statutory provision to the contrary, all actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within [two years,] the time provided in section 13–80–102 [11] after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(b) A claim for relief arises under this section at the time the claimant or the claimant's predecessor in interest discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury.

Ch. 114, sec. 1 § 13–80–104(1)(a–b) Colo. Sess.Laws 697 (approved May 23, 1986) (bracketed language and footnote 11 added). The effective date of section 13–80–104 was established by House Bill No. 1352, which provides in relevant part as follows:

Section 23. **Effective date—applicability.** (1) This act shall take effect July 1, 1986, *and shall apply to claims for relief arising on or after said date.*

Ch. 116, sec. 2(1) Colo.Sess.Laws 709 (approved May 23, 1986) (emphasis added). Thus complying with the language of section 13–80–104(1)(a–b) so as to establish when the Howards' claim for relief arose for the specific purpose of determining which limitations statute should apply to this case, it is clear that if the Howards' claim for relief against Wood Bros. arose on or after July 1, 1986, section 13–80–104(1)(a–b) is the applicable statute of limitations; however, if the Howards' claim arose before July 1, 1986, section 13–80–127(1)(a–b) controls. *See generally* art. V, sect. 19, Colo. Const. (an act of the General Assembly shall take effect on the date stated in the act); *Senior Corp. v. Board of Assessment Appeals,* 702 P.2d 732 (Colo. 1985) (when particular provisions of a statute contain their own conditions on applicability, the statute can be applied only to the extent permitted by such special provisions); *Casados v. People,* 119 Colo. 444, 204 P.2d 557 (1949) (the numerous rules for statutory construction on the subject of repeals of an earlier by a later statute are subservient to the supreme rule that the intention of the legislature should be vitalized by judicial construction where such intention can be discovered from the body of the new enactment).

By its terms, "a claim arises" under section 13–80–104(1)(b) for the purpose of determining whether that section is the applicable statute of limitations provision, "at the time *the claimant or the claimant's predecessor in interest* discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which

---

**11.** Section 13–80–102(1)(a) provides as follows: **General limitation of actions—two years.** (1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:

(a) Tort actions, including but not limited to actions for negligence, trespass, malicious abuse of process, malicious prosecution, outrageous conduct, interference with relationships, and tortious breach of contract[.]

ultimately causes the injury." (Emphasis added). The record shows that the Blakes, as the Howards' "predecessor[s] in interest," first discovered the physical manifestations of the defect, i.e., the so-called "cosmetic problems," in January, 1984; the Howards, the "claimant[s]" in this dispute, first knew of these problems when the Blakes disclosed them to the Howards in August, 1984.[12] Thus both the Blakes' and the Howards' respective discoveries of the outward manifestations of the underlying defect antedated the July 1, 1986, effective date of section 13–80–104 by at least two years. As such, that limitations statute, according to its express terms, does not pertain to the instant case. We now examine the statutory language of the proper statute of limitations in this case, section 13–80–127(1)(a).

### C.

■ Section 13–80–127(1)(a) provides that negligence actions against build-

er/vendors "shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such actions be brought more than ten years after the substantial completion of the improvement to the real property...." [13] Thus to determine whether the Howards' action against Wood Bros. was commenced within the two-year limitations period allowed by section 13–80–127(1)(a), it is necessary to establish the date that the Howards' "claim for relief arose" as contemplated by the language of that section.

Subsection (1)(b) of section 13–80–127 delimits the time that a claim for relief arises as "the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature." Thus, as the "damaged party," [14] the Howards had a claim for relief which arose, for purposes of de-

**12.** Section 13–80–104(1)(b) refers to "discover[y of] the physical manifestations of the defect [by either] the claimant *or* the claimant's predecessor in interest" as the time when the statute of limitations begins to run.

**13.** It is undisputed that the "substantial completion of the improvement to the real property," i.e., the date that the construction on the subject home was completed, was May, 1978; thus the clause in § 13–80–127(1)(a) barring actions that are brought "more than ten years after the substantial completion of the improvement to the real property," is not applicable here.

**14.** As in its appeal in *Howard II*, Wood Bros. asserts that even if this court "applies the predecessor act [i.e., § 13–80–127], then there exist[s] a *bona fide* and legitimate legal issue as to whether or not the trial court should have instructed the jury concerning the statute of limitations giving the knowledge of the predecessors in title." Thus Wood Bros. argues that the common law concept of "tacking," *see Aetna Life & Cas. Co. v. Lobianco & Son Co., Inc.,* 43 Ill. App.3d 765, 2 Ill.Dec. 454, 357 N.E.2d 621 (1976), which would require that the Blakes' knowledge of the manifestations of the underlying defect in the subject home be imputed to the Howards, is applicable here. Because the trial court ruled that the Howards' predecessors in interest were unaware of the defect and there was not sufficient evidence in the record to support a contrary finding, we need not reach the issue raised by Wood Bros.' "tacking" argu-

ment. Specifically, the trial court ruled that "the evidence presented in this case and all inferences from the evidence most favorable to [Wood Bros.] in the case shows that the Blakes had no knowledge of the defect in the property. [They] had knowledge of manifestations of a defect, but not of the defect." Based on this finding, the trial court rejected the jury instructions tendered by. Wood Bros. which would have placed the issue of the Blakes' knowledge of the defect, for the purpose of supporting Wood Bros.' tacking argument, before the jury.

After a close review of the record, we find no evidence to support Wood Bros.' argument that the Blakes had any knowledge, constructive or otherwise, of the defect *before* the Howards learned of it. We thus refuse to set aside the trial court's ruling that there was insufficient evidence presented at trial that the Blakes, as predecessors in interest to the Howards, had knowledge of an underlying structural defect. *See People v. Carillo–Montes,* 796 P.2d 970 (Colo. 1990) (trial court's findings of fact are binding upon reviewing court where supported by competent evidence).

Furthermore, we see no error by the trial court in refusing to submit Wood Bros.' instruction to the jury as to the predecessors' in interest knowledge of the underlying structural defect, where Wood Bros. failed to submit competent evidence to warrant such a jury instruction. Because it is settled that a reviewing court is to assume, unless the record shows otherwise, *see Englewood State Bank v. Tegtman,* 85 Colo. 340, 275 P. 935 (1929), that the issues in a case were

termining whether the commencement of the Howards' action against Wood Bros. exceeded the two-year time allowance under section 13–80–127(1)(a–b), when they discovered, or reasonably should have discovered, the "defect" in the subject home.

We have previously construed the meaning of the term "defect" under section 13–80–127(1)(b). In *Criswell v. M.J. Brock and Sons, Inc.*, 681 P.2d 495 (Colo.1984), we noted that "in construction projects discovery of the physical manifestations of a defect is not necessarily concurrent in time with discovery of the defect itself." *Criswell*, 681 P.2d at 498–99. In the course of determining the date when the plaintiffs in *Criswell* discovered or should have discovered the "defect itself" in the home they had purchased from the defendant builder/vendors, we followed the reasoning advanced by the court in *Society of Mount Carmel v. Fox*, 90 Ill.App.3d 537, 46 Ill. Dec. 40, 413 N.E.2d 480 (1980).

In *Fox*, the defendant had argued that the applicable statute of limitations began to run when the plaintiff first observed fractures in the subject building, rather than at the time the plaintiff discovered the source of the fracturing as it was depicted in a contractor's report. The *Fox* court held that the statute of limitations began to run at the time the report was received by the plaintiff, inasmuch as there was no evidence to show that the plaintiff knew or should have known of the *defective design or construction* of the building prior to that date. In adopting the standard set out in *Criswell*, we thus held that the language of section 13–80–127(1)(b), which establishes the commencement of the two-year time allowance for bringing an action as the time that "the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury," refers to the time when the damaged party knew or should have known of the defective design or construction of the real property improvement, and not when the physical manifestations of the underlying defect were originally discovered by the damaged party. *Criswell*, 681 P.2d at 499; *see also, Trinity Broadcasting v. Westminster*, 848 P.2d 916 (Colo.1993) (under the "discovery rule of tort law," statute of limitations does not begin to run until plaintiff discovered, or through the exercise of reasonable diligence should have discovered the defect); *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1046 (Colo.1983) (J. Rovira dissenting) (section 13–80–127 allows actions against a builder by a subsequent purchaser and applies to *structural damage* to a residence, because even "if a buyer is sufficiently knowledgeable to evaluate a home's condition, he rarely has access to make any inspection of the underlying structural work, as distinguished from the merely cosmetic features").

The standard that we articulated in *Criswell* applies here. The record shows and it is uncontroverted that the Howards became aware of the physical manifestations of the defective design and/or construction of the subject home no earlier than August, 1984, when the Blakes brought the "cosmetic" problems in the home to their attention. Roughly one year later, in July, 1985, the Howards noticed some exacerbation of these problems which, according to the record, first caused the Howards to suspect an "underlying structural problem with the house." [15] The Howards subsequently un-

submitted under proper instructions and because Wood Bros. did not seek review of the jury instructions given by the trial court, we accept the trial court's rulings on this matter, and accordingly do not address Wood Bros.' "tacking" argument. *See also, Western Light & Power Co. v. Poor*, 69 Colo. 380, 194 P. 613 (1921) (it is error to charge a jury on an issue where there is absolutely no evidence in the record upon which to base such an instruction); *Graves v. Davenport*, 45 Colo. 270, 100 P. 429 (1909) (appellant will not be heard to complain of the refusal of an instruction which is inappli-

cable to the facts presented upon the trial); *Houck v. Williams*, 34 Colo. 138, 81 P. 800 (1905) (trial court's refusal of an instruction not based on the evidence is not error); *Fugate v. Smith*, 4 Colo.App. 201, 35 P. 284 (1894) (a judgment will stand by presumption when the record is such that the reviewing court cannot see that the instructions were inapplicable to the evidence).

15. The record also indicates that nearly three years after this date, in March, 1988, the Howards hired a geotechnical and materials consul-

dertook a series of actions in an attempt to identify and correct the underlying defects in their home, including submitting a "major structural defects claim" to their homeowners insurance company in September, 1985, and then approximately one year later, in retaining a structural engineering firm to examine the subject home. When the Howards were unsuccessful in securing an extra-legal resolution to their injury, they commenced their legal action on June 16, 1986, against Wood Bros. wherein they specifically alleged defective construction techniques. Given these facts, it appears that the earliest point in time that the Howards knew or had reason to know of the defective design and/or construction of their home occurred when the dramatic escalation of the problems in the subject home became apparent, i.e., in July, 1985.

In any event, however, because we have determined that section 13–80–127(1)(a–b) is the applicable statute of limitations, the relevance of the dispute as to whether the standard to apply is based upon the date the "physical manifestations" of the defect, or the "defective design or construction" in the subject home was, or should have been discovered by the Howards, is mooted, given that the earliest point in time that the Howards *could have known* about the problems in the home—however they are characterized—i.e., August, 1984, fell well within the two-year time limitation under section 13–80–127(1)(a).

We thus hold that because the record supports the conclusion that the Howards could not have known of the underlying defects in their home before August, 1984, and because they commenced their action against Wood Bros. within two years of that date, i.e., on June 16, 1986, as a matter of law, their claim is not time-barred. Moreover, because we agree with the trial court and the court of appeals that Wood Bros. submitted insufficient evidence that the Howards' predecessors in interest had knowledge of the structural defect, we decline to resolve the legal issue as to whether the "prior owners' knowledge" must be imputed to the Howards.[16]

### III.

We now address the question concerning the propriety of the court of appeals determination that the second appeal in this case, brought by Wood Bros., was frivolous. Because we find that the basis for Wood Bros.' appeal is not so futile, irrational or unjustified as to warrant a clear finding that its appeal was frivolous, we set aside the court of appeals decision on this matter.

### A.

Under C.A.R. 38(d), if an "appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Recently, in *Artes–Roy v. City of Aspen*, 856 P.2d 823, 828 (Colo.1993), we held that where an action is continued without "substantial justification," the action is frivolous. Similarly, in *Mission Denver Co. v. Pierson*, 674 P.2d 363, 366 (Colo.1984), we held that "an appeal should be considered frivolous if the proponent can present no rational argument based on the evidence or law in support of a proponent's claim or defense, or

---

tant to conduct a subsurface investigation and to complete an engineering analysis report for the purpose of acquiring evidence concerning the specific underlying defects in the subject home to be used during the trial; that consultant was then endorsed as an expert for the Howards at trial. Although Wood Bros. asserts that this was the date that the Howards *first* became aware of the structural defects in their home to support its argument that § 13–80–104 is the applicable statute by virtue of its effective date, this assertion lacks logical and factual support. The Howards specifically alleged defective construction in their complaint filed on June 16, 1986. It would be absurd to conclude

that, notwithstanding the existence of the Howards' complaint that specifically alleged defective construction techniques on June 16, 1986, the Howards were nevertheless not aware of the alleged defective construction techniques until after July 1, 1986. *See Employers Mut. Ins. Co. v. Board of Com'rs of Pitkin County*, 102 Colo. 177, 78 P.2d 380 (1938) (the pleadings are the concrete means provided under the law to enable a court to ascertain the actual claims made by the respective parties).

16. *See supra*, n. 14 at pp. 932–33 for a discussion of evidence presented and the relevant legal issues controlling our review of this issue.

the appeal is prosecuted for the sole purpose of harassment or delay." (Citations omitted.) [17] *See also Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (Colo. 1984) (the touchstone of a "frivolous" action is whether it is "manifestly insufficient or futile"); *accord Lego v. Schmidt*, 805 P.2d 1119 (Colo.App.1990), *cert. denied*, No. 90SC557 (March 11, 1991). Illustrations of frivolous appeals wherein sanctions have been imposed include those where the appeals were instituted "vexatiously," *see e.g., London v. Allison*, 87 Colo. 27, 284 P. 776 (1930) (because cause of action is *res judicata*, attorney fees and costs are to be taxed to proponent of appeal); where the appeals were found to be wholly lacking in credible evidentiary support, *see e.g., Rogers v. Charnes*, 656 P.2d 1322 (Colo.App.1982) (appeal from affirmance of license revocation was frivolous and warranted the imposition of attorney fees where filed for the single purpose of delaying revocation); where the appeals lacked any rational justification, *see e.g., Merrill Chadwick Co. v. October Oil Co.*, 725 P.2d 17 (Colo.App.1986) (assertions are both frivolous and groundless where party "made no rational argument based on any credible evidence or on the law"); or finally, where the proponent failed to present a plausible argument in support of a novel claim, *see Sullivan v. Lutz*, 827 P.2d 626 (Colo.App.1992) (party must attempt to advance plausible theory and argument for adoption of new legal principle; otherwise sanctions may be imposed).

▪ By contrast, appellate courts in Colorado have refused to impose or affirm sanctions assessed by the trial courts where a genuine disputed issue in the matter is presented, *see Rocky Mountain Sales & Serv., Inc. v. Havana RV, Inc.*, 635 P.2d 935 (Colo.App.1981), where a proponent makes an argument that although

lacking in precedential authority, nonetheless is supported by logic, *see Jorgenson Realty, Inc. v. Box*, 701 P.2d 1256 (Colo. App.1985), and where the appeal was brought in good faith, notwithstanding that the pleadings, affidavits, and depositions disclose, as a matter of law, that no genuine issue exists, *see Price v. Conoco, Inc.*, 748 P.2d 349 (Colo.App.1987). The past reluctance by state appellate courts to impose sanctions in the nature of attorney fees and court costs derived from the general principles established by DR 7–101 and DR 7–102 of the Code of Professional Responsibility which obligated an attorney to zealously represent his or her client even when such representation may require the lawyer to advance innovative claims seeking an extension, modification, or reversal of existing law.[18] Such advocacy, even though based on arguments that are "extremely unlikely to prevail on appeal … cannot be said necessarily [to be] frivolous." *Pierson*, 674 P.2d at 365. Hence the purpose underlying the award of attorney fees and costs is to deter "egregious conduct," and not to discourage legal theories that, while having no support in our extant decisional law, nevertheless may be persuasive by virtue of the unique character of the case. Accordingly, as a general rule, we have declined to impose this sanction except in cases that are clear and unequivocal. *Id.*

### B.

▪ In the case before us, the court of appeals in *Howard II* based its finding that Wood Bros.' appeal was frivolous on the ground that the *Howard I* court's "ruling on the issue clearly constituted the law of the case … [and as such] we cannot countenance attempts to relitigate claims that previously have been conclusively determined on appeal in the same case." *How-*

---

17. We also noted in *Mission Denver Co. v. Pierson*, 674 P.2d 363, 366 (Colo.1984) that the term "frivolous" as used in § 13–17–101(3), which authorizes courts of record to award attorney fees under certain conditions in suits for money damages, "should also control in C.A.R. 38 cases."

18. Effective January 1, 1993, the Code of Professional Responsibility was superseded by the Colorado Rules of Professional Conduct (the "Rules of Conduct"). Rules 1.2, 1.3, and 3.1, among other provisions of our new Rules of Conduct obligate attorneys to, among other things, represent their clients in a fashion similar to that required under DR 7–101 and DR 7–102.

*ard II*, 835 P.2d at 561. Thus, according to the *Howard II* court, Wood Bros. challenged the trial court's ruling that section 13–80–127 was the proper statute of limitations to apply, a challenge that constituted an "attempt to relitigate ... [an issue] conclusively determined on appeal in the same case."

Our view of. Wood Bros.' appeal differs, however. In *Howard II*, Wood Bros. did not argue, as the court of appeals implies, that section 13–80–127(1)(a–b) was necessarily the incorrect statute of limitations to apply in this case. Rather, Wood Bros. asserted that the common law concept of "tacking" should apply under either section 13–80–127(1)(a–b) or the successor statute, *see* n. 14 at pp. 932–33. Because Wood Bros. first raised the "tacking" issue on appeal in *Howard II* and furthermore, because other jurisdictions have accepted similar legal theories in cases where the evidence adduced at trial can sustain the argument, *see e.g., Bradler v. Craig*, 274 Cal. App.2d 466, 79 Cal.Rptr. 401 (1969); *Aetna Life & Cas. Co. v. Lobianco & Son Co., Inc.*, 43 Ill.App.3d 765, 2 Ill.Dec. 454, 357 N.E.2d 621 (1976) the theory propounded by Wood Bros. on appeal cannot be said to be either a "relitigation" of a settled issue, wholly lacking in precedential support, or otherwise devoid of a plausible rationale; neither is there any evidence that the appeal was brought vexatiously. Furthermore, we cannot ignore the fact that the vitality of the *Howard I* court's determination as to the proper statute of limitations to apply in this case, i.e., section 13–80–127(1)(a–b), is diminished by virtue of the trial court's subsequent ruling on remand that the Howards' action was commenced *after* the effective date of the successor statute, section 13–80–104(1)(a–b).[19] Ac-

cordingly, we set aside the court of appeals decision which found Wood Bros.' appeal to be frivolous, and vacate that court's order instructing the trial court to impose attorney fees and court costs against Wood Bros.

## IV.

In summary, we affirm the court of appeals decision upholding the judgment of the trial court that, as a matter of law, the Howards' action against Wood Bros. Homes, Inc., for the negligent design and construction of their home is not time-barred. We reverse that part of the court of appeals decision which held that Wood Bros.' appeal was frivolous, however, and accordingly, the court of appeals order instructing the trial court, upon remand, to impose attorney fees and court costs against Wood Bros., is set aside.

MULLARKEY, J., concurs in part and dissents in part.

Justice MULLARKEY concurring in part and dissenting in part:

I concur with the majority that the Howards' claim is not time-barred. I also agree that because Wood Bros. failed to submit any evidence that the Howards' predecessors in interest had knowledge of the structural defect, we need not address whether, as a matter of law, the "prior owners' knowledge" must be imputed to the Howards.

I do not join part III of the majority opinion, however, because I believe that Wood Bros.' second appeal of the statute of

---

**19.** The court of appeals in *Howard I* held that § 13–80–127(1)(a–b) was the applicable statute of limitations in this case because the Howards filed their action on June 16, 1986, a date that preceded the effective date of the successor statute, § 13–80–104(1)(a–b). Both the trial court on remand, and the panel of the court of appeals that decided *Howard II* stated that the Howards' action was commenced on July 29, 1986, a date that *did not* antedate the effective date of § 13–80–104(1)(a–b). This inconsistency, while not dispositive of our decision not to

impose sanctions in this case, diminishes, at least arguably, the clarity of the *Howard I* decision. While we agree with the *Howard I* court that § 13–80–127(1)(a–b) is indeed the applicable statute of limitations in this case, we draw this conclusion only after a detailed examination of the language of that statute and its successor. Thus we note here that we do not find it unreasonable for Wood Bros. to raise the statute of limitations issue before the court of appeals and on certiorari review to this court.

limitations issue was frivolous.[1] The majority holds that the court of appeals erred in awarding attorney fees and costs because, *inter alia*, the "tacking" argument presented by Wood Bros. in *Howard II* was neither a "relitigation" of a settled issue nor "wholly lacking in precedential support." Maj. op. at 936. The majority also finds that the second appeal was not "unreasonable" because the court of appeals in *Howard I* and the trial court upon remand found that the action was commenced on different dates, thereby creating an ambiguity in the law of the case. *Id.* at 936. In my view, Wood Bros.' "tacking" argument is not supported by any evidence in the record, and the discrepancy in commencement dates is legally insignificant. Hence, I would affirm the court of appeals determination that Wood Bros.' second appeal was frivolous.

The imposition of attorney fees and costs is justified where an appeal is found to be wholly lacking in credible evidentiary support, *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984); *Lego v. Schmidt*, 805 P.2d 1119, 1125 (Colo. App.1990), *cert. denied*, No. 90SC557 (Mar. 11, 1991), even if the legal theory upon which it rests has "some superficial merit." *Southeastern Colo. Water Conserv. District v. Cache Creek Mining Trust*, 854 P.2d 167, 177 (Colo.1993); *Western United Realty*, 679 P.2d at 1069. To be successful, the "tacking" argument raised on appeal by Wood Bros. in *Howard II* would require a finding by the trial court that the Howards' predecessor in interest knew of the defect in question, which knowledge could then be imputed to the Howards under that theory.

The trial court ruled on remand that "the evidence presented in this case and all inferences from that evidence most favorable to Wood Bros." failed to support the allegation by Wood Bros. that the prior owners had knowledge of the defect in the property. "After a close review of the record," the majority agrees that "no evidence [exists] to support Wood Bros.' argument" as to the prior owners' knowledge. Maj. op. at 932 n. 14. Such a finding negates the possibility that this "tacking" claim could have been meritorious on appeal and leads to the inevitable conclusion that Wood Bros.' claim is "not supported by any credible evidence at trial." *Western United Realty*, 679 P.2d at 1069.

The fact that a form of "tacking" argument has some "precedential support" in other jurisdictions does not immunize it from attack as a frivolous appeal. Maj. op. at 936. The bare assertion of a legal theory as the basis for an appeal does not justify relitigation of a settled question where no credible evidence to support the application of such a theory was ever presented at trial. To hold otherwise substantially undercuts the frivolous appeal rule in C.A.R. 38(d), because it permits parties to avoid sanctions by merely citing on appeal an improbable legal theory unsupported by the facts adduced at trial.

The majority also argues in a series of footnotes that because a discrepancy exists in the record as to the date upon which the Howards commenced their action, Wood Bros.' second appeal of the statute of limitations issue could not be frivolous. Maj. op. at 928 n. 6, 929 n. 8, 936 n. 19. It concedes, however, that the exact date of commencement "does not alter the result in the resolution of the matters before us...." *Id.* at 928 n. 6. The majority inexplicably concludes nevertheless that this date discrepancy "invalidat[ed] the very basis for the *Howard I* court's determination as to which limitations statute should apply...." *Id.* at 929 n. 8.

---

1. It should be noted at the outset that the court of appeals in *Howard II* imposed sanctions on Wood Bros. for relitigating the issue of whether section 13–80–104, and not section 13–80–127 as stated in *Howard I*, should govern the case. Wood Bros. argued in its opening brief to the court of appeals in *Howard II* that depending upon when the Howards' cause of action was deemed to have accrued, section 13–80–104(a)(1) was the applicable statute. In its reply brief to the court of appeals, Wood Bros. went further to assert that "Section 13–80–104, C.R.S. (1987 Repl.Vol. 6A) is the controlling statute of limitations." This clearly constitutes an appeal of the prior determination in *Howard I.*

As the majority correctly points out, the question of when the action against Wood Bros. was commenced is not an issue upon which we granted certiorari. *Id.* at 927 n. 5. Moreover, at no point has Wood Bros. raised the argument set forth in the majority opinion that the alleged discrepancy in the date of commencement created an ambiguity in the law of the case, thereby affording Wood Bros. an opportunity to relitigate the settled question of which statute of limitations applied. In fact, Wood Bros. has repeatedly asserted that the date of commencement was July 29, 1986, without providing any analysis as to the relevance of that date in deciding which statute of limitations governed the case. Its argument that the later statute of limitations (section 13–80–104) applied to the Howards' claim was based on its contention that the claim arose *after* both the original and amended complaints were filed. Specifically, Wood Bros. argued that the Howards' claim arose in 1988 when the Howards' expert submitted a report to them documenting the underlying defects.[2]

Even if I were to follow the majority and ignore the fact that Wood Bros. never raised the alleged ambiguity in the commencement date as the basis for its appeal, I believe that the majority misinterprets *Howard I*. The confusion of dates for commencement of this action arises because the Howards filed an original complaint on June 16, 1986, and an amended complaint on July 29, 1986, in their attempt to name the proper defendant. As the majority explains, there was some confusion as to the correct name of the defendant because of various changes in its corporate structure. Maj. op. at 927. In *Howard I*, after setting forth the relevant facts, the court of appeals found that the filing date of the Howards' action was June 16, 1986. It then stated that section 13–80–104 only applied to claims arising on or after July 1, 1986, "[h]ence, it was inapplicable here." Slip op. at 1. The trial court on remand found

that while "the original action in this case was filed in June of 1986," the date on which the amended complaint naming Wood Bros. Homes Inc. as defendant was filed on July 29, 1986.

Although the court of appeals in *Howard I* did not fully explain its reasoning, its reference to the June 16, 1986 date is nothing more than a common-sense observation that where an action is *filed* prior to the relevant date, the underlying claim also must logically have *arisen* prior to that date. There is no indication in the record, and it is highly implausible to assert, that the trial court intended, by its later finding that the action actually commenced on July 29, 1986, to reopen the settled issue of which statute of limitations applied. Such a technical conflict between the court of appeals' opinion and the trial court's order cannot amount to a source of "confusion" to counsel for Wood Bros. as to which statute of limitations applied. Maj. op. at 928 n. 6.

Finding that the case *commenced* either before or after July 1, 1986 has no legal significance to the question of which statute of limitations applies. The language of section 13–80–127 is unambiguous: "[a]ll actions … shall be brought within two years after the claim for relief *arises*, and not thereafter…." § 13–80–127(1)(a) (emphasis added). As the majority correctly demonstrates, an action may be commenced years after the underlying claim arose. Maj. op. at 932–34. In this case, whether the Howards filed their action against Wood Bros. on June 16 or July 29, 1986 is only important for purposes of determining whether the applicable statute of limitations, once established, has expired.[3] It cannot therefore be argued that the trial court's finding as to the filing date undermined the settled law of the case, set forth in *Howard I*, as to which statute of limitations applied.

---

2. Wood Bros. argued, alternatively, that the Howards' claim arose several years earlier, when the prior owners first became aware of possible defects.

3. The trial court discussed the fact that the action commenced on July 29, 1986 only within the context of deciding whether the two-year limitation period under *section 13–80–127*, the applicable statute, barred the Howards' claim.

The majority attempts to bolster its argument by citing the reference in *Howard II* to "July 29, 1986" as the date when the action commenced. Maj. op. at 929 n. 8. I first note, however, that earlier in the same opinion the court of appeals describes the action as commencing in June 1986. The use of both dates only reflects that an original complaint and an amended complaint were filed. More importantly, the content of the *Howard II* opinion is irrelevant to the question whether Wood Bros.' second appeal was frivolous. The issue of whether an appeal is frivolous or groundless must be analyzed as of the time the appeal was made. Therefore, any statements by the court of appeals in *Howard II* as to the commencement date cannot, and should not, affect our decision as to whether Wood Bros. was justified in raising a previously-settled issue.

The record simply does not support the majority's view that "it was the reincarnation of July 29, 1986 as the date the action was commenced which contributed to some confusion regarding the applicable statute of limitations in *Howard II*." Maj. op. at 928 n. 6. Indeed, it is difficult to fathom how Wood Bros. could have been misled by the trial court into believing that section 13–80–104(1)(a) governed this case. This is especially true in light of Wood Bros.' argument in *Howard II* that, under a "tacking" theory, the Howards' claim in fact arose as far back as when the *prior owners* became aware of the defect.

For the foregoing reasons, I respectfully dissent from part III of the majority opinion.